261 N.J. Super. 269 (1993)
618 A.2d 882
KENNETH WERNOWSKI, PETITIONER-APPELLANT,
v.
CONTINENTAL CAN COMPANY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1992.
Decided January 8, 1993.
*270 Before Judges GAULKIN, HAVEY and STERN.
George F. Hendricks argued the cause for petitioner (Mr. Hendricks of counsel; Robin L. Pedersen, on the brief).
Julie C. Blitzer argued the cause for respondent (Hill Wallack, attorneys; Ms. Blitzer on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
*271 In this workers' compensation case, petitioner Kenneth Wernowski appeals from a judgment dismissing his claim petition for physical and psychiatric injuries allegedly arising out of his employment with respondent Continental Can Company (Continental Can). Petitioner claims he suffered from aluminum toxicity as a result of his employment, as well as a traumatic stress disorder arising from his perception that he suffered from the disease. The judge of compensation found that petitioner had not suffered from aluminum poisoning, and consequently dismissed both petitioner's physical and psychiatric claims. We affirm in part and reverse in part. We conclude that petitioner's claim of total or partial permanent disability attributed to his stress disorder must be reconsidered even though he failed to establish he suffered from a physical disability associated with his exposure to aluminum during his employment.
Petitioner worked for Continental Can from January 1971 to July 1986. He described the condition at the plant as "very misty, cloudy" and observed dust particles on his clothing and skin on a daily basis. On occasion he detected silver dust particles in his mucus. In the early 1980's, he developed nausea, migraine headaches and dizziness. He began to suffer weight loss and a numbness on the left side of his body. In October 1985, petitioner sought medical help from Dr. Milton Bronstein, an internist.
Dr. Bronstein conducted a series of blood tests which disclosed elevated aluminum levels which he attributed to petitioner's occupation. On June 23, 1986, petitioner's aluminum level reached ninety-two micrograms per liter, with the normal range being from two to twenty-five. Dr. Bronstein advised petitioner that he should not be working with aluminum. Consequently, petitioner left his employ with Continental Can on July 14, 1986. Subsequent blood-serum results disclosed aluminum levels of forty-six micrograms to less than five micrograms per *272 liter. Dr. Bronstein concluded that petitioner was totally disabled because of aluminum toxicity and associated anxiety.
Dr. Samuel Pollock, petitioner's psychiatrist, testified that petitioner suffered from "neurological residuals" and brain damage, attributable to his exposure to noxious aluminum fumes and dust. He fixed petitioner's disability at seventy-five percent partial total, neuropsychiatric. Dr. Roland Goodman, an internist, was of the view that the aluminum toxicity and petitioner's "severe neuropsychiatric condition" rendered him totally and permanently disabled. Respondent's expert, Dr. Howard Kippen, an internist, found no evidence of aluminum toxicity. He thus concluded that petitioner's depression and stress disorder were not associated with his place of employment. Respondent's psychiatrist, Dr. Allen Josephs, was of the same view, noting that although petitioner was "preoccupied" with the diagnosis of aluminum poisoning, he was neurologically "normal."
In dismissing petitioner's claim, the judge of compensation focused primarily on whether plaintiff had suffered from aluminum toxicity as a result of his employment. The judge rejected Dr. Bronstein's opinion that petitioner suffered from the disease, in part because the doctor did "not know what the air quality was at the plant." The judge found the blood-serum tests of little significance, and attributed "great value" to Dr. Kippen's testimony that, although petitioner may have had elevated aluminum levels in his blood, there was no evidence of aluminum poisoning. Implicit in the judge's findings is that, in the absence of competent proof that petitioner suffered from aluminum toxicity, his psychiatric disability was not compensable.
We are satisfied that the judge's determination that petitioner did not suffer from aluminum toxicity as a result of his employment with Continental Can is supported by substantial credible evidence in the record as a whole. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); De *273 Angelo v. Alsan Masons, Inc., 122 N.J. Super. 88, 89-90, 299 A.2d 90 (App.Div.), aff'd o.b., 62 N.J. 581, 303 A.2d 883 (1973). However, that finding is not dispositive of petitioner's stress disorder claim.
The question is whether petitioner's psychiatric disability is a "compensable occupational disease." That term is defined by N.J.S.A. 34:15-31:
a. For the purpose of this article, the phrase "compensable occupational disease" shall include all diseases arising out of and in the course of employment, which are due in a material degree to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or place of employment.
It is now settled that compensable personal injuries include psychiatric as well as physical injuries to the person, and hence "psychiatric disability apart from physical disability may be an independent compensable workers' compensation claim." Saunderlin v. E.I. Dupont Co., 102 N.J. 402, 406-07, 508 A.2d 1095 (1986). Nevertheless, "claims of psychiatric disability, like those of physical disability, must be based upon demonstrable objective medical evidence," rather than on purely subjective factors. Id. at 408, 412, 508 A.2d 1095. The objective/subjective distinction is not resolved by determining whether the petitioner suffers physical manifestations of psychiatric disability; the distinction is between "independent professional analysis and the bare statement of the patient." Id. at 411-12, 508 A.2d 1095.
The compensability of a psychiatric injury is also not dependent upon whether the petitioner has suffered a work-related "physical" accident or trauma. The modern trend is to shed the "old-fashioned legal insistence upon something `physical'" and to hold compensable a "nervous" injury arising from a work-related mental or emotional stimulus. 1B Arthur Larson, The Law of Workmen's Compensation § 42.23 (1987). Professor Larson categorizes these cases as "mental-mental." Ibid. Thus, in Simon v. R.H.H. Steel Laundry, Inc., 25 N.J. Super. 50, 60-61, 95 A.2d 446 (Cty.Ct.), aff'd o.b., 26 *274 N.J. Super. 598, 98 A.2d 604 (App.Div.), certif. denied, 13 N.J. 392, 99 A.2d 859 (1953), the County Court held that despite the absence of a physical disability, petitioner's complete psychoneurotic disability following an explosion at his work site was compensable.
Moreover, "that the stimulus is gradual, in the form of sustained stress, tension, worry, strain, frustration, or harassment, does not ... make nervous injury any the less compensable than if it were caused by sudden shock." Larson, supra, § 42.23(b). For example, in Williams v. Western Elec. Co., 178 N.J. Super. 571, 585, 429 A.2d 1063 (App.Div. 1981), we held that mental illness caused by repetitive mental stress or stimuli may be compensable if there is objective evidence "when viewed realistically, ... that the alleged work exposure was to a material degree a contributing factor." In pronouncing the "objective" and "material degree" criteria, Williams drew from an analogous heart case which required proof that the heart attack was "due in some realistic sense and material degree to a risk reasonably incidental to the employment...." Id. at 580, 429 A.2d 1063 (quoting Walck v. Johns-Manville Products Corp., 56 N.J. 533, 556, 267 A.2d 508 (1970)). We found no compensability in Williams because the evidence consisted primarily of petitioner's subjective, neurotic reaction to the demands of his job, particularly the requirements of the assembly line. 178 N.J. Super. at 585-86, 429 A.2d 1063. We added "[i]t was petitioner's unfortunately diseased mind which turned this environment into an abnormal situation." Id. at 586, 429 A.2d 1063.
In Goyden v. State Judiciary, 256 N.J. Super. 438, 445-46, 607 A.2d 651 (App.Div. 1991), aff'd o.b., 128 N.J. 54, 607 A.2d 622 (1992), we recently reaffirmed the Williams "objective-material degree" standard, but added that the "objectively stressful working conditions must be `peculiar' to the particular work place, and there must be objective evidence supporting a medical opinion of the resulting psychiatric disability...." See also N.J.S.A. 34:15-31. Citing Larson, supra, § 42.23(b), we *275 cautioned that claims of mental injuries caused by stress in the work place "represent[] the broadest reach of compensability." 256 N.J. Super. at 443, 607 A.2d 651. We concluded that the underlying condition from which petitioner suffered, his compulsive personality, created his stress on the job, and that his own retirement decision, combined with his personality, triggered his depression. Id. at 458, 607 A.2d 651. Thus, it was not a condition "peculiar" to the work place, but an idiosyncratic, preexisting mental disorder which caused Goyden's psychiatric disability.
What is clear from the above-cited cases is that the employee need not show he or she suffered some physical disability before a psychiatric injury is deemed compensable. The issue is whether there is objective evidence that the repetitive stimuli, viewed realistically, were "peculiar" to the work place. If so, there must be competent objective, medical evidence that the psychiatric disorder is "due in a material degree" to the repetitive work-place stimuli. N.J.S.A. 34:15-31. Regrettably, the judge of compensation did not apply these principles. The question here is not, as the judge viewed the issue, whether petitioner suffered from aluminum poisoning. The judge must apply the Williams "objective-material" test by focusing on petitioner's perception that he suffered from the disease, not whether he suffered from it. A remand for new findings is therefore necessary.
We do not hesitate to conclude on the facts as presently developed that the condition that allegedly caused petitioner's stress disorder was "peculiar" to his work place. For fifteen years he worked in an environment where he was exposed to and inhaled aluminum dust and fumes. According to petitioner, the ventilation was poor, the air was "very misty, cloudy," and at the end of the day his clothing and skin were covered with aluminum particles. As such, the work-place "stimuli" allegedly causing petitioner's stress disorder are unquestionably more discrete and defined than those advanced in Williams and Goyden. Thus, it cannot be disputed that the repetitive exposure *276 to the aluminum dust was an objectively verified work condition peculiar to petitioner's work place. See Goyden, 256 N.J. Super. at 458, 607 A.2d 651.
The issue therefore is whether there is objective evidence, realistically viewed, which sustains petitioner's burden of proving that his mental disorder was "due in a material degree" to the repetitive work-place exposure at Continental Can. N.J.S.A. 34:15-31. Petitioner's substantial weight loss, migraine headaches, dizziness and nervousness, are undisputed, as is the history of elevated aluminum levels found in his blood. Also not disputed is that Dr. Bronstein told petitioner about the blood serum test results, and advised him that he suffered from aluminum poisoning. The psychiatrists for both petitioner and respondent acknowledged that petitioner had become depressed, concerned for his well-being and preoccupied with how he could rid his body of what he deemed to be a poisonous substance. Thus, unlike the alleged "mental-mental" claim in both Williams and Goyden, here we have a psychiatric disorder arising from the employee's perception of a "physical" stimulus, the increased levels of aluminum in his blood system.
On the other hand, there is evidence that after petitioner left his employment the aluminum level in his blood normalized. Nevertheless, his stress disorder worsened. Dr. Pollock acknowledged that petitioner's mental disorder continued
even though he knows that he has a normal level of aluminum ... and that's obsessive, and in a way delusive. It's not a true belief, but it's psychologically important, because it is part of the anxiety state, and it is due to stress at work in my opinion.
Based on this testimony Continental Can argues that petitioner's "belief was not caused by anything in the work environment; but rather, by Petitioner's subjective interpretations of the independent medical advice he received."
However, petitioner's subjective reaction is not to be completely disregarded. Williams, 178 N.J. Super. at 585, 429 A.2d 1063. Whether petitioner sustains his burden of proof in satisfying the Williams "objective-material degree" criteria is a fact issue which must be resolved after considering the totality of *277 factors, including the nature of petitioner's work, the duration and extent of his actual exposure to aluminum, the reasonableness of his psychological response to his condition, and whether any unrelated cause or event may have triggered his disorder. For example, Continental Can's experts testified that petitioner's mental state may have been caused by unrelated factors such as excessive use of codeine, prescribed by Dr. Bronstein, or petitioner's exposure to Agent Orange while serving in Vietnam. This evidence may have some bearing on whether petitioner's stress disorder was "due to a material degree" to his exposure to aluminum at the work place.
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. We leave it to the judge of compensation to decide whether the parties may present additional proofs.