746 A.2d 475 (2000)
Francesca LOMBARDO, Appellant,
v.
REVLON, INC., Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1999.
Decided February 25, 2000.
*476 Edward P. Shamy, Jr., North Brunswick, for appellant.
Lester S. Goldblatt, Metuchen, for respondent (James A. Hicks, on the brief).
Before Judges WALLACE, Jr. and LESEMANN and BILDER.[1]
The opinion of the court was delivered by WALLACE, Jr., J.A.D.
This is a workers' compensation appeal by petitioner from the dismissal of her petition. We reverse.
Petitioner suffered injuries from a compensable accident on April 14, 1989. She filed a claim petition on December 17, 1990 and an amended claim petition on May 29, 1992, alleging subsequent additional injuries to her back and shoulders "as a result of the extreme difficulty she had while walking/limping."
The matter was tried on June 5, 1998 and October 9, 1998. The evidence at trial included the testimony of petitioner, the medical reports of five medical experts in lieu of their testimony, and testimony of an investigator retained by the employer. Plaintiff testified at the hearing on June 5, 1998, and the medical reports were submitted at the hearing on October 9, 1998.
The medical examinations of petitioner and the resulting reports were accomplished between June 1994 and June 1996. All of the doctors agreed that petitioner was permanently impaired but in varying percentages.
*477 The trial judge also made observation of the appearance of petitioner's injuries. He noted the brace petitioner wore on her left leg was a set of steel rods attached to a plastic appliance, which fit around the left leg just below the knee and was attached to a special shoe. He noted that petitioner's left foot was somewhat atrophied with a significant skin graft on the inner aspect of the left foot.
Following the submission of petitioner's evidence, the employer's private investigator, Michael Beukena, testified at the hearing on October 10, 1990. Beukena performed video surveillance of petitioner on various occasions. The video[2] taken on December 10, 1997 showed petitioner walking while carrying a large bundle with no apparent difficulty and no cane. The video taken on December 11, 1997 showed petitioner carrying toy store merchandise which she placed in the trunk of her car before driving away. Later petitioner was shown carrying a basket of groceries after shopping for about thirty minutes and displayed no apparent difficulty while walking or loading the groceries in the trunk of her car. The video taken on January 12, 1998 showed petitioner leaving the Workers' Compensation court wearing the brace on her left foot. Later that day, she was videotaped walking normally without a brace or her cane while visiting a model home with her husband. The video taken on January 15, 1998 showed petitioner pushing a shopping cart and lifting bags of groceries in each hand. She was not wearing the brace and did not use a cane while walking with no apparent difficulty. The last video taken on February 23, 1998 showed petitioner walking around the block and then picking up a garbage can and carrying it into her house.
The Workers' Compensation judge rendered his decision on October 30, 1998. After reciting the facts, the judge stated:
When the Petitioner appeared and testified before me, she walked with a cane, she appeared to be depressed to me, as a lay person. She wore the brace on her left foot, which she demonstrated to me in chambers. The Petitioner made a very sympathetic witness, and the court was impressed with her testimony giving it some degree of credibility based upon the admitted severity of the original injury and the nature of the treatment which the Petitioner underwent following that injury. The fact that the Petitioner is in receipt of Social Security disability benefits was one additional factor which entered into the court's feeling with regard to the credibility to the Petitioner on the date of her testimony. All of that, however changed when the Respondent produced videotape on October 9, 1998 taken by Michael George Beukena, a professional investigator who videotaped the Petitioner on December 10, 1997, on December 11, 1997, on January 12, 1998, on January 15, 1998.
....
I have seen people exaggerated, I have seen video brought in on many occasions, and most of the time, the video is innocuous; it neither demonstrates that the petitioner is able to perform to a degree greater than the testimony or it shows that the Petitioner is able to do some of the things that the testimony said they were not able to do. Most of the time the video essentially shows someone who may have testified that they can't do anything but what they mean is that they can't do what they used to do, and showing them doing something which they testified they can't do can easily be interpreted that way. But this case goes far beyond that. This case is totally not understandable by me. This Petitioner suffered a legitimate compensable injury in 1989. It was a serious injury at the time. She received treatment to reduce the effects of the injuries, but there is no *478 arguing with the fact that she is left with a permanent injury in her left foot resulting from the degloving injury. She is left with scarification in the upper part of her body as the donor site of the skin graft that was placed on her left heel, and she was paid 15 percent of partial total voluntarily by the Respondent.
I find that this petitioner has attempted to defraud the Respondent, attempted to defraud the Workers' Compensation System, and this Petitioner is subject to the penalties provided by 34:15-57.4, the newly enacted anti-fraud in the Workers' Compensation Act.
....
I cannot, for the life of me, understand why someone who suffers a significant injury who would otherwise be entitled to legitimate compensation for that injury and resorts to this type of conduct. It benefits no one ... All I can do is judge it, and in this case, I find that the Petitioner's demonstrated abilities on the videotape are so in conflict with her repeated demonstrations of disability when she is in this building they can only lead me to the inevitable conclusion that whatever she is demonstrating while she is here is intended to convince this Court to award her compensation to which she is not entitled.
The judge concluded that petitioner's conduct subjected her to the provisions of N.J.S.A. 34:15-57.4C(1) and forfeited her right to any additional benefits.
On appeal, petitioner presents the following arguments:
POINT I:
THE VIDEO TAPE EVIDENCE PRODUCED BY RESPONDENT WAS NOT INCONSISTENT WITH PETITIONER'S TESTIMONY REGARDING HER INJURIES, DISABILITY AND LIMITATIONS.
POINT II:
PETITIONER'S TESTIMONY WAS NOT FRAUDULENT AND DID NOT TRIGGER THE FORFEITURE PROVISIONS OF N.J.S.A. 34:15-57.4.
Initially, we note our role in reviewing the determinations of state administrative agencies is limited. We may not substitute our own factfinding for that of the Judge of Compensation even if we were inclined to do so. Rather, we must defer to the agency, provided only that its findings of fact are supported by substantial credible evidence in the record as a whole and are not so wide of the mark as to be manifestly mistaken. Brock v. Public Serv. Elec. & Gas. Co., 149 N.J. 378, 383, 693 A.2d 894 (1997); SSI Medical Serv. v. State Dept. of Human Serv., 146 N.J. 614, 620, 685 A.2d 1 (1996); Laffey v. City of Jersey City, 289 N.J.Super. 292, 303, 673 A.2d 838 (App.Div.), certif. denied, 146 N.J. 500, 683 A.2d 202 (1996); Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965).
We turn now to this appeal. Following oral argument, we invited the parties to submit supplemental briefs stating their position on the application of N.J.S.A. 34:15-57.4C(1) which became effective on August 14, 1998. As noted above, petitioner was injured on April 14, 1989, testified on June 5, 1998, and submitted medical reports from her evaluations. The employer's video-taped evidence which challenged the extent of petitioner's disability was taken between December 1997 and February 1998. Although the medical reports were submitted into evidence at the hearing in October of 1998, the evaluations of petitioner and the medical reports took place about two years prior. It is apparent that all of the evidence relied upon by the trial judge in finding that petitioner had violated N.J.S.A. 34:15-57.4C(1), occurred prior to the effective date of the statute in August of 1998. Thus, we must address whether the statute should be given retroactive effect.
The general rule of statutory construction is that courts favor prospective application of statutes. Phillips v. *479 Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992); Street v. Universal Maritime, 300 N.J.Super. 578, 580, 693 A.2d 535 (1997); see also Serrano v. Gibson, 304 N.J.Super. 314, 700 A.2d 390 (App.Div.1997) (stating that retroactive applications of changes in the law are not generally favored); Kendall v. Snedeker, 219 N.J.Super. 283, 530 A.2d 334 (App.Div.1987)(asserting that statutes are to be applied prospectively). "The purpose behind this rule is to give people fair notice of the laws that they are expected to follow; they cannot be expected to obey laws that have not yet been enacted." Street, supra, 300 N.J.Super. at 580, 693 A.2d 535. The presumption in favor of prospective application of statutes is strongest in criminal cases due to the constitutional prohibition against ex post facto application of penal laws that would impose punishment for an act that was not punishable at the time it was committed or additional punishment to that then prescribed. Ibid.
Our Supreme Court has articulated three exceptions to the general rule against retroactive application of a statute. Curiale, supra, 128 N.J. at 617-18, 608 A.2d 895; Gibbons v. Gibbons, 86 N.J. 515, 432 A.2d 80 (1991). Retroactive application is appropriate where (1) the express or implied legislative intent required retroactive application because it was necessary to make the statute workable or give it the most sensible interpretation, (2) the statute is ameliorative or curative, or (3) the parties' expectations warrant retroactive application. Gibbons, supra, 86 N.J. at 522, 432 A.2d 80. "Even if one of these exceptions applies, a statute should not be given retroactive application if it would result in `manifest injustice' to one of the parties." Serrano, supra, 304 N.J.Super. at 318-19, 700 A.2d 390.
N.J.S.A. 34:15-57.4 is a criminal statute that carries both criminal and civil penalties. It provides in part:
a. A person shall be guilty of a crime of the fourth degree if the person purposely or knowingly;
(1) Makes, when making a claim for benefits pursuant to R.S.34:15-1 et seq., a false or misleading statement, representation or submission concerning any fact that is material to that claim for the purpose of wrongfully obtaining the benefits;
c. (1) If a person purposely or knowingly makes, when making a claim for benefits pursuant to R.S.34:15-1 et seq., a false or misleading statement, representation or submission concerning any fact which is material to that claim for the purpose of obtaining the benefits, the division may order the immediate termination or denial of benefits with respect to that claim and a forfeiture of all rights of compensation or payments sought with respect to the claim.

[N.J.S.A. 34:15-57.4(a)(1); (c)(1).]
The statute was expressly made effective August 14, 1998. Thus, the first of the exceptions referred to requiring retroactive application based on legislative intent, does not apply because the statute is clearly made effective on a certain date, August 14, 1998.
Under the second exception, the term "ameliorative" refers only to a criminal penalty, Street, supra, 300 N.J.Super. at 582, 693 A.2d 535, and the term curative refers to new law being given "retroactive effect if it is designed merely to carry out or explain the intent of the original statute." Nelson v. Board of Educ. of Old Bridge, 148 N.J. 358, 370, 689 A.2d 1342 (1997). Consequently, retroactive application would not be ameliorative because we are addressing a civil penalty and it would not be curative because it does not correct an inadvertent error in the original enactment, since this statute is the first of its kind.
The third exception requires retroactive application if the parties' expectations warrant retroactive application. This exception does not apply because neither *480 plaintiff nor defendant had any expectation regarding the applicability of the statute when the plaintiff filed her case in 1990.
Consequently, since none of the requirements for retroactive application of the statute apply, we conclude it was error to apply the statute retroactively to the facts of this case.
We reverse and remand.
NOTES
[1] Judge Bilder did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.
[2] The video was not supplied to the court as part of the appendix. The reference to the content of the video is taken from the Workers' Compensation opinion.