835 A.2d 1247 (2003)
364 N.J. Super. 333
Kim STROKA, Petitioner-Respondent,
v.
UNITED AIRLINES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 2003.
Decided November 26, 2003.
*1248 Christopher J. Saracino argued the cause for appellant (Pietras Saracino, attorneys; Mr. Saracino, on the brief).
Lawrence T. Marinari argued the cause for respondent (Shebell & Shebell, attorneys; Raymond P. Shebell, Oakhurst, on the brief).
Before Judges AXELRAD, WINKELSTEIN and LARIO.
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
This case arises out of the tragic events of September 11, 2001. Petitioner is a flight attendant for United Airlines (United). She was scheduled to work Flight 93 from Newark to San Francisco on September 11, but several days earlier she had requested and received the day off. Consequently, she was not aboard the flight when it was attacked by terrorists and crashed in Shanksville, Pennsylvania. After learning of the crash, and the horrific way her fellow flight attendants died, petitioner developed post-traumatic stress syndrome, for which she sought and received medical and temporary total disability benefits. The workers' compensation judge also ordered United to pay petitioner's counsel fee. The judge stayed his order pending this appeal.
United concedes that petitioner's post-traumatic stress syndrome is directly related to the events of September 11, but argues that she does not qualify for worker's compensation benefits because *1249 her disability did not arise out of or in the course of her employment. Although petitioner presents a very sympathetic case, she does not qualify for workers' compensation benefits because her condition did not arise in the course of her employment. Accordingly, we reverse the decision of the workers' compensation court and remand for judgment to enter in favor of United.
The following facts were stipulated between the parties and are not in dispute. Petitioner was hired as a flight attendant by United in 1984. She attended a training program that included safety issues, such as the evacuation of an aircraft under emergency circumstances. United did not provide her with training specific to hijackings; but, each year flight attendants were shown a security video which touched on the issue. In addition, United provided flight attendants with a Federal Aviation Administration (FAA) handbook that devoted a chapter to how flight attendants should handle a hijacking crisis, and what stressors flight attendants should expect as a result of their job. Petitioner read that chapter before September 11.
On August 17, 2001, petitioner was assigned to fly a line, or a combination of flights, for the month of September. One of the flights was Flight 93, scheduled to leave Newark for San Francisco on September 11, 2001. On September 6, 2001, however, she requested that she be given September 11 off because her former husband, also a flight attendant, was scheduled to work that day, and she needed the day off to pick up her daughter from school. Her request was granted and she was given September 11 off without pay. Thus, she was admittedly not working on September 11. Instead, she went bowling while her daughter attended school.
Petitioner became aware of the terrorist attacks on the World Trade Center while at the bowling alley. She watched television after the first plane struck the North Tower, and realized after the second plane struck the South Tower that one of the jets was an American Airlines flight and the other a United flight. She also learned that a United flight crashed in Pennsylvania, but she did not know that the flight had originated in Newark.
While she was on route from the bowling alley to pick up her daughter, her husband called and told her that the plane that had crashed in Shanksville was Flight 93the flight she was scheduled to be on board. Petitioner immediately became upset and emotionally distraught. She was sobbing and trembling, nauseous, and began to have problems with her stools. She knew three of the flight attendants on Flight 93, and had flown with the pilots.
Petitioner watched the tragedy replayed on television over the next few days. She cried, trembled and could not sleep. Initially, she was unable to eat; then she began to binge.
Since September 24, 2001, Dr. Stephen Clarfield, a psychologist, has treated petitioner for post-traumatic stress syndrome on a biweekly basis. Petitioner has been upset, forgetful and has had trouble sleeping. She has not returned to work. She remains afraid, having learned of the brutal way the hijackers murdered the flight attendants on the plane. She has panic attacks when she sees a runway. Petitioner is overwhelmed by guilt, knowing that her vacation day caused a co-employee to die. Her best friends were tortured and killed. The parties agree that petitioner is temporarily totally disabled as a result of her disorder, and requires ongoing psychiatric treatment.
To be entitled to compensation under the Workers' Compensation Act (Act), N.J.S.A. 34:15-1 to -142, an employee's accidental injury must "aris[e] out of and in the course of employment." Jumpp v. City of Ventnor, 177 N.J. 470, 476, 828 *1250 A.2d 905 (2003); N.J.S.A. 34:15-7. Although the Act has been broadly interpreted to bring as many cases as possible within its coverage, Silagy v. State, 105 N.J.Super. 507, 510, 253 A.2d 478 (App. Div.), certif. denied, 54 N.J. 506, 257 A.2d 106 (1969), it was amended by the Legislature in 1979 to "reduce costs by, among other things, `sharply curtail[ing compensability for] off-premises accidents.'" Jumpp, supra, 177 N.J. at 477, 828 A.2d 905 (quoting Hon. Alfred J. Napier, Impact of the Reform Act of 1980, 96 N.J. Lawyer, 17, 18 (Summer 1981)).
Employment, as defined in the Act subsequent to its amendment, is:
[D]eemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer....
[N.J.S.A. 34:15-36].
Whether an accident arose out of and in the course of employment is a two-part question. First, to establish that the accident arose out of employment, a petitioner must demonstrate a causal connection between the employment and the accident. Coleman v. Cycle Transformer Corp., 105 N.J. 285, 289, 520 A.2d 1341 (1986). Second, to prove whether the accident occurred in the course of employment, a petitioner must show a time and place connection between the employment and the accident. Ibid.
We first address whether petitioner's disorder arose out of her employment.[1] To qualify, her employment must have been a contributing cause of the injury, so that the risk of the occurrence was reasonably incidental to her employment. Coleman, supra, 105 N.J. at 290, 520 A.2d 1341. Although "[a]n employee does not have to be actually engaged in work for the employer at the time of an accident" for the disability to have arisen out of the employment, Buerkle v. United Parcel Serv., 26 N.J.Super. 404, 407-08, 98 A.2d 327 (App.Div.1953), the disorder must, however, "issue from or be contributed to by conditions which bear some essential relation to the work or its nature." Williams v. Western Elec. Co., 178 N.J.Super. 571, 585, 429 A.2d 1063 (App.Div. 1981). An injury arises out of the employment if "it is more probable that the injury would not have occurred under the normal circumstances of everyday life outside of the employment." Coleman, supra, 105 N.J. at 291, 520 A.2d 1341. The risk of the occurrence may fall into one of three categories: 1) those distinctly associated with the employment, such as industrial accidents; 2) those that are neutral, which are uncontrollable circumstances that do not originate in the employment environment but rather happen to befall the employee during the course of his or her employment, such as acts of God; and 3) those personal to the employee. Id. at 291-92, 520 A.2d 1341. (internal citations and quotations omitted).
Petitioner characterizes the risk of airplane hijacking as falling into the first *1251 category, arguing that it is distinctly associated with her employment as a flight attendant. We agree.
The precipitating event of her post-traumatic stress disorderan airplane hijackingwas peculiar to the nature of her work as a flight attendant, and essentially related to her workplace, an airplane. United anticipated the risk that hijackings pose to flight attendants, as is evident from the training video shown to petitioner "which touched on the issue" of hijacking, and from the FAA handbook United provided to her which contained an entire chapter about the ways flight attendants should handle hijackings. United recognized the risk hijacking posed to its employees, and attempted to provide instructions on how to deal with it. This training provided to petitioner was distinctly associated with petitioner's job. See Cairns v. City of East Orange, 267 N.J.Super. 395, 400-01, 631 A.2d 978 (App.Div.1993) (quoting Walck v. Johns-Manville Prods. Corp., 56 N.J. 533, 556, 267 A.2d 508 (1970) (holding occupational disease arose out of employment if precipitating event was "peculiar" to the workplace, or held some "essential relation to the work or its nature")); cf. Berko v. Freda, 93 N.J. 81, 88, 459 A.2d 663 (1983) (finding that because police officers are statutorily required to undergo training in high speed chase situations, high speed chases are inherent risks in police work). Thus, because an essential relation exists between the job of flight attendant and the risk of hijacking, petitioner's injury is incidental to and arose out of her employment.
Where we differ with petitioner's position, and with the conclusion of the workers' compensation judge, is whether petitioner's post-traumatic stress syndrome arose in the course of her employment. We hold that it did not.
An accident arises in the course of employment when "it occurs (a) within the period of the employment and (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment, or doing something incidental thereto." Crotty v. Driver Harris Co., 49 N.J.Super. 60, 69, 139 A.2d 126 (App.Div.), certif. denied, 27 N.J. 75, 141 A.2d 318 (1958). See also Coleman, supra, 105 N.J. at 289, 520 A.2d 1341 (quoting Mikkelsen v. N.L. Indus., 72 N.J. 209, 212, 370 A.2d 5 (1977)) (activities incidental to duties of employment are those "within the scope of the work-period and the work-place while the employee was engaged in ... customary, or reasonably expectable activities"). These principles are illustrated by the 1979 Amendment to the Act, N.J.S.A. 34:15-36, which generally limited compensable activities to those which occur after arrival at, and before departure from, the workplace. Chisholm-Cohen v. County of Ocean, Dep't of Emergency Servs., 231 N.J.Super. 348, 351, 555 A.2d 713 (App.Div.1989). Only under limited circumstances, where the employee is required by the employer to be away from the employer's place of employment and is, at the time, engaged in the direct performance of his or her duties, will an incident which occurred off premises be compensable. N.J.S.A. 34:15-36.
Here, when Flight 93 was attacked and crashed, petitioner was taking a day off without pay to care for her daughter and go bowling. She was not engaged in any activity that could conceivably constitute "a clear and substantial benefit to [her] employer." Mikkelsen, supra, 72 N.J. at 214, 370 A.2d 5.
Petitioner claims that the inherent risk of her job tied her disability to her work, even though she was not actually on the job at the time of the incident. She cites a line of cases for the proposition that it is not necessary that an injury actually occur during work to be compensable. See *1252 Joy v. Florence Pipe Foundry Co., 64 N.J.Super. 13, 21-22, 165 A.2d 191 (App. Div.1960), certif. denied, 34 N.J. 67, 167 A.2d 55 (1961) (finding employee's stroke work-related because it was caused in part by stressors from work); Crotty, supra, 49 N.J.Super. at 74, 139 A.2d 126 (stock room clerk murdered while on work break); and Buerkle, supra, 26 N.J.Super. at 407, 98 A.2d 327 (injury compensable when employee injured while carrying a booster battery owned by employer to start carpool vehicle after work). These cases do not, however, support petitioner's position. Although the employees' injuries or disabilities arose while they were away from their places of employment and not engaged in an activity benefiting their employers, their injuries or disabilities originated, at least in part, while they were on the job at their places of employment.
That is not the case here. Petitioner's post-traumatic stress syndrome originated not while she was at work, but while she was taking a day off. Nothing happened while she was working which led to her current condition. She was not working at the time Flight 93 crashed, nor at the time she heard the news of the crash. In fact, her reaction to the event occurred because she was not working, not because she was working. If we were to accept petitioner's argument, off-duty police officers, firefighters, and others whose jobs are inherently risky could seek compensation benefits when a fellow employee was injured or killed while taking that employee's place. No authority exists to support that position.
To put it more simply, when Flight 93 was attacked and crashed, causing petitioner's post-traumatic stress syndrome, she was not reasonably fulfilling the duties of her employment, "or doing something intimate thereto." See Crotty, supra, 49 N.J.Super. at 69, 139 A.2d 126. Therefore, her disability did not arise in the course of her employment.
We reverse the order of the workers' compensation judge that awarded petitioner medical and temporary total disability benefits for her post-traumatic stress syndrome, and vacate the award of counsel fees. We remand to the workers' compensation court to dismiss plaintiff's complaint.
Reversed and remanded.
NOTES
[1] Although petitioner did not suffer a physical trauma, she is not precluded from obtaining workers' compensation benefits because a purely psychiatric injury, even without accompanying physical trauma, may be compensable. Wernowski v. Continental Can Co., 261 N.J.Super. 269, 273, 618 A.2d 882 (App. Div.), certif. denied, 133 N.J. 437, 627 A.2d 1142 (1993).