939 A.2d 805 (2008)
398 N.J. Super. 79
Yakup ACIKGOZ, Petitioner-Respondent,
v.
NEW JERSEY TURNPIKE AUTHORITY, Respondent-Respondent, and
John G. Lowden, Jr., Intervenor-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 2007.
Decided January 23, 2008.
*807 Robert R. Nicodemo III, Haddonfield, argued the cause for appellant (Richard V. Cosentino, on the brief).
Kathleen Drew argued the cause for respondent Yakup Acikgoz (Monte & Rudolph, attorneys; Ms. Drew, on the brief).
Curt J. Cox argued the cause for respondent New Jersey Turnpike Authority (Kamensky Cohen & Associates, Trenton, attorneys; Mr. Cox, on the brief).
Before Judges AXELRAD[1], SAPP-PETERSON and MESSANO.
The opinion of this court was delivered by MESSANO, J.A.D.
On May 4, 2001, petitioner Yakup Acikgoz was involved in a motor vehicle accident with John G. Lowden, Jr. Both men were employed by the New Jersey Turnpike Authority (the Authority) and Lowden also served as first vice-president of the New Jersey Turnpike Employees Union Local 194 (the Union). On the date of the accident, Lowden was on "union release time," had spent a majority of the day in the Union's East Brunswick office, and was proceeding to the Authority's southern division maintenance yard in Moorestown. Petitioner meanwhile had completed working the day shift at that facility and was going home in his car. At approximately 4:30 p.m., or shortly thereafter, the parties' vehicles collided on a bridge on an access road near the maintenance facility.
On November 7, 2002, petitioner filed a Law Division complaint against Lowden asserting general claims of negligence in the operation of his vehicle and seeking damages. Lowden answered the complaint and asserted the provisions of N.J.S.A. 34:15-8 as an affirmative defense to the tort action, claiming both he and petitioner were in the course of their employment at the time of the accident.
On April 27, 2003, petitioner also filed a claim petition against the Authority in the Division of Workers' Compensation (the Division). Subsequently, Lowden successfully moved to intervene in that action. The Authority intervened in the Law Division suit and subsequently successfully moved to stay that litigation and transfer the matter to the Division. The Law Division judge's order of August 9, 2005, provided for the transfer of "jurisdiction to [the Division]," "to determine the application of N.J.S.A. 34:15-8," to determine "whether [petitioner's] motor vehicle accident . . . was compensable under the Workers' Compensation Act," and to determine "whether . . . Lowden was a co-employee under the Workers' Compensation Act."
On January 31, 2006, and April 3, 2006, the compensation judge conducted a trial limited to the issues of compensability under N.J.S.A. 34:15-1 and the applicability of N.J.S.A. 34:15-8. In a written opinion dated October 26, 2006, he determined that neither petitioner nor Lowden were in the course of their employment at the time of the accident, that therefore N.J.S.A. 34:15-8 did not apply, and that petitioner's accident was not compensable. In an order dated November 17, 2006, the judge dismissed the claim petition and relinquished *808 jurisdiction of the tort action to the Law Division. Lowden then filed this appeal.
Lowden argues that the workers' compensation judge erred in determining that petitioner was not in the course of his employment at the time of the accident "because . . . when the accident occurred [petitioner] was still at the [Authority's] place of employment within the meaning of the workmen's (sic) compensation act." Lowden further contends that the compensation judge erred in determining that he was not in the course of his employment when the accident occurred because the "accident occurred at the employer's place of employment," he was there to "pick up his paycheck," or, alternatively, he was "engaged in union business sanctioned by and approved by his employer" at the time. We have considered these arguments in light of the record and applicable legal standards. We affirm.
As a general rule, our review of an administrative agency's fact-finding determinations is limited in scope. Lombardo v. Revlon, Inc., 328 N.J.Super. 484, 488, 746 A.2d 475 (App.Div.2000). We will not disturb those findings if they were reached upon sufficient, credible evidence present in the record. Akef v. BASF Corp., 305 N.J.Super. 333, 340, 702 A.2d 519 (App. Div.1997). This is particularly applicable to appeals involving determinations and orders made by a workers' compensation judge. Close v. Kordulak Bros., 44 N.J. 589, 598-99, 210 A.2d 753 (1965); De Angelo v. Alsan Masons, Inc., 122 N.J.Super. 88, 90, 299 A.2d 90 (App.Div.), aff'd o.b., 62 N.J. 581, 303 A.2d 883 (1973).
A reviewing court shall limit "its inquiry solely" to the sufficiency of evidence upon which the compensation judge relied, with "due regard to the [compensation judge's] opportunity . . . to hear[] the witnesses [and judge] their credibility and with due regard to his expertise." Ramos v. M & F Fashions, 154 N.J. 583, 594, 713 A.2d 486 (1998)(citing Bradley v. Henry Townsend Moving & Storage Co., 78 N.J. 532, 534, 397 A.2d 323 (1979)). Only where the findings are not supported by the record may an appellate court "appraise the record as if [it] were deciding the matter at inception and make [its] own findings and conclusions." Pioneer Nat'l Title Ins. Co. v. Lucas, 155 N.J.Super. 332, 338, 382 A.2d 933 (App.Div.), aff'd o.b., 78 N.J. 320, 394 A.2d 360 (1978).
The testimony at trial revealed that the accident took place on an overpass located above the travel lanes of the New Jersey Turnpike on an access road that led to and from the Authority's maintenance yard, part of a complex the Authority shared with the New Jersey State Police. The Authority's maintenance yard is comprised of administrative buildings, garages, and a fuel pump and its employees park their vehicles in a designated parking area of the complex.
The State Police have barracks on the site and they investigated the accident and filed a report. That portion of the complex dedicated to use by the State Police is clearly delineated and the police employees have their own dedicated parking spaces.
Access to the complex is possible through four separate points, including one off a public road. While the access roads and ramps do not have barriers preventing public access, posted signs located at the overpass and ramps indicate the roadways are for official use only. However, petitioner testified that he had personal knowledge that members of the general public use the overpass.
The Authority's assistant traffic engineer and acting director of its Operations Department, Solomon Caviness, testified *809 that the overpass was used by service type vehicles, such as UPS, by the State Police, and by the Authority's employees as a means of ingress and egress to the complex. He acknowledged that this employee practice was not prohibited or discouraged by the Authority. Caviness testified that petitioner had traveled "some distance" from the site of the Authority's portion of the complex before impacting Lowden's vehicle.
Petitioner was employed in the Authority's maintenance department and performed traffic protection work such as roadway closures, debris cleanup, and grass cutting. On the day of the accident, he reported for work at 8:00 a.m. and worked his usual shift until 4:30 p.m. After punching out, he proceeded to his car, spoke to a co-employee in the designated parking area for a few minutes, and drove out of the complex and onto the access overpass. He was going home.
Lowden was employed as a toll technician and normally worked out of the Authority's southern division. He was released from his toll technician duties on those days he performed union activities. Pursuant to the collective bargaining agreement between the Union and the Authority, "union release time" was considered as an "excused absence with pay." The typical hours for release time was from 9:00 a.m. to 5:00 p.m., though Lowden testified that he would sometimes end his union duties before 5:00 p.m. On the day of the accident, Lowden began his union release time at 9:00 a.m. and worked out of the Union's offices in East Brunswick, New Jersey. He left at 3:30 p.m. to go to the southern division maintenance complex for three reasons: 1) to pick up his paycheck as it was payday; 2) to see petitioner about becoming a full-time union member; and 3) to engage in general union politicking with other employees. Lowden drove to the maintenance yard utilizing the southbound lanes of the Turnpike and used an employee courtesy pass so that he did not have to pay the toll. Franceline Ehret, president of the Union at the time of the accident, testified that she specifically asked Lowden to provide petitioner with a union membership application on the day of the accident. Donna Boda, secretary of the Union, testified that when she learned of Lowden's intention to travel to the maintenance yard, she personally gave him an application for petitioner to complete.
However, Lowden acknowledged that if he was unable to meet with petitioner that day, he otherwise intended to seek him out on Monday. Thus, the meeting with petitioner was not an urgent necessity. Neither Lowden, nor Boda, nor Ehret called to notify petitioner of the Union's intention to have anyone meet with him on the day in question.
The time of the accident was disputed at trial. Although the police report listed it as 4:30 p.m., petitioner testified that he left the Authority's administration building and headed to his vehicle when the 4:30 p.m. buzzer sounded signaling the end of the day shift. He testified that he started out of the parking lot between approximately 4:35 and 4:40 p.m. Petitioner drove over the overpass with the intent of accessing the southbound Turnpike lanes and collided with Lowden, who was driving the wrong way in petitioner's lane of travel, at the end of the overpass. Lowden testified the accident occurred at approximately 4:20 p.m., or approximately forty-five minutes after he left East Brunswick.
The compensation judge resolved these various factual disputes in the following fashion. He determined that the accident occurred "between 4:45 [p.m.] and 5:00 [p.m.]" based upon petitioner's testimony that he "punched out at 4:30," then walked *810 to the parking lot, spoke to some co-workers, and drove off. The judge also determined that Lowden's "sole purpose" in traveling to the maintenance yard "was to pick up his pay check." He concluded that Lowden's explanation that the travel was also related to union business "d[id] not ring true." The judge reasoned that if indeed that was the purpose for Lowden's trip to the complex, "it would be logical to arrive before the end of the shift to insure seeing [petitioner] as he came off duty or at least call to advise [petitioner] that he wished to see him at the end of his shift." The judge determined that Ehret's and Boda's testimony "appeared scripted to benefit [] Lowden and [was] not believable."
The judge also reasoned that Lowden's use of the turnpike to go from East Brunswick to Moorestown was based upon "convenience and not for the benefit of the employer, [the Authority]." Thus, while Lowden was in the course of his employment while on union release time, his travel to and from the sites "must be treated in the same manner as if he was going to or coming from a regular shift."
Our review of the record leads us to conclude that all of these factual determinations made by the workers' compensation judge were supported by substantial credible evidence in the record "and [were] not so wide off the mark as to be manifestly mistaken." Tlumac v. High Bridge Stone, 187 N.J. 567, 573, 902 A.2d 222 (2006) (citations omitted).
Under the Workers' Compensation Act, N.J.S.A. 34:15-1 through 1-142 (the Act), an employee is entitled to recover for injuries "arising out of and in the course of his employment. . . ." N.J.S.A. 34:15-1; Jumpp v. City of Ventnor, 177 N.J. 470, 476, 828 A.2d 905 (2003). The "arising out of" portion of the statute refers to the causal origin of the accident, and the "`course of employment' portion refers to the time, place, and circumstances of the accident in relation to the employment." Valdez v. Tri-State Furniture, 374 N.J.Super. 223, 232, 863 A.2d 1123 (App.Div.2005). To prove compensability under the Act, a petitioner must establish that the accident arose out of his employment by demonstrating a causal connection between the employment and the accident. Coleman v. Cycle Transformer Corp., 105 N.J. 285, 290, 520 A.2d 1341 (1986); Stroka v. United Airlines, 364 N.J.Super. 333, 339, 835 A.2d 1247 (App.Div.2003), certif. denied, 179 N.J. 313, 845 A.2d 138 (2004). Second, he must also show a time and place nexus between the employment and the accident to prove the injury occurred in the course of employment. Stroka, supra, 364 N.J.Super. at 339, 835 A.2d 1247.
Because of the Act's definition of employment, "[t]he line between compensability and noncompensability . . . is very strict." Cressey v. Campus Chefs, 204 N.J.Super. 337, 344, 498 A.2d 1274 (App. Div.1985). Pursuant to N.J.S.A. 34:15-36, employment commences "when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer."
Commonly referred to as the premises rule, this provision distinguishes between accidents that occur on the employer's premises from those that do not. Ramos, supra, 154 N.J. at 591, 713 A.2d 486. Thus, an employee may be found to have been in the course of employment and entitled to compensation even when he was not currently engaged in work duties, if the accident occurred on the employer's premises. Valdez, supra, 374 N.J.Super. at 232-33, 863 A.2d 1123 (noting *811 that New Jersey takes a "flexible" approach in resolving "in the course of employment" issues and that an employee need not actually be working in order to meet this test). That the injured employee may have been "off the clock" does not automatically preclude compensability because the situs of the accident is a dispositive factor. Ibid.; Brower v. ICT Group, 164 N.J. 367, 372, 753 A.2d 1045 (2000); see also Kristiansen v. Morgan, 153 N.J. 298, 317, 708 A.2d 1173 (1998), modified, 158 N.J. 681, 730 A.2d 1289 (1999) (holding "an employee who punches out on the time clock at the [employer's] front entrance and is injured while walking through the plant to reach his or her car parked in a rear parking lot" sustains a compensable accident).
Generally, however, absent one of the statutory exceptions not at issue in this case, an employee who is not physically on the employer's premises is not in the course of the employment. Kristiansen, supra, 153 N.J. at 316, 708 A.2d 1173. "The pivotal questions under the premises rule are (1) where was the situs of the accident, and (2) did the employer have control of the property on which the accident occurred?" Zahner v. Pathmark Stores, Inc., 321 N.J.Super. 471, 478, 729 A.2d 478, (App.Div.1999). Kristiansen, supra, 153 N.J. at 316-17, 708 A.2d 1173; Cannuscio v. Claridge Hotel and Casino, 319 N.J.Super. 342, 350, 725 A.2d 135 (App.Div.1999). For purposes of the Act, control exists "when the employer owns, maintains, or has exclusive use of the property." Kristiansen, supra, 153 N.J. at 316-17, 708 A.2d 1173; see Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 104, 543 A.2d 45 (1988)(holding that these factors, while not dispositive, are indicative of whether employer control is present).
Defendant argues that since the overpass where the accident occurred is owned and maintained by the Authority, the compensation judge erred in determining both petitioner and Lowden were no longer "in the course of [their] employment" at the time of the accident. He argues that this case presents a situation similar to that presented by the petitioner in Ramos, who was injured in an elevator shaft that, although accessible to others, was regularly used by his employer. Here, Lowden argues that even though the access overpass was also accessible to others such as deliverymen and the State Police, the Authority specifically permitted its employees to use the overpass in going and coming to the complex.
However, in concluding petitioner was not in the course of his employment, the compensation judge noted petitioner had left the Authority's portion of the complex and the employee parking area. He also noted that the access road was only one of several means of ingress and egress to the maintenance yard, including one point of access that adjoined a public road. The judge determined that the Authority "neither encouraged nor discouraged the use of the roadway" leading to the access overpass where the accident occurred. He concluded that "once [petitioner] left the designated parking [area] it became part of his normal commute," and the accident did not occur on the employer's premises.
We would generally agree with this analysis. First, control of the overpass cannot be based upon the Authority's exclusive use of the property since it was in fact utilized by not only defendant's employees, but by the State Police, various business invitees, and the general public. Furthermore, as the compensation judge noted, to conclude the Authority "controlled" the overpass because it owned and maintained it would essentially abrogate the premises rule because the Authority owns and maintains the entire New Jersey *812 turnpike system. Clearly, the mere fact that an Authority employee was involved in an accident on a road owned and maintained by the Authority cannot serve as a sufficient basis to conclude the accident occurred in the course of petitioner's employment.
We conclude, as did the compensation judge, that the facts at hand are much closer to those presented in our decisions in N.J. Mfrs. Ins. Co. v. Pub. Serv. Elec. & Gas, 234 N.J.Super. 116, 560 A.2d 117 (App.Div.), certif. denied, 118 N.J. 178, 570 A.2d 948 (1989) and Manole v. Carvellas, 229 N.J.Super. 138, 550 A.2d 1278 (App. Div.1988), than to those presented in Ramos. In N.J. Mfrs., we concluded that a petitioner injured in an auto accident while driving to work on a road owned by his employer, maintained by a third-party, patrolled by the local police, and used on occasion by the public, 234 N.J.Super. at 117, 560 A.2d 117, was not injured at a place "under the control of his employer." Id. at 119, 560 A.2d 117 (quoting N.J.S.A. 34:15-36). Although we took note that the distance between the plant where the petitioner worked and the site of the accident was two miles, we also observed
[T]here is no indication that [petitioner] was exposed to any added hazard, created to enhance the business interests of [defendant], while traveling on the access road. The risk from driving on this roadway was no different than the risk from driving on any public roadway. And although [defendant] owned the roadway, there is no indication that it exercised any control over its use.
[Id. at 119, 560 A.2d 117.]
Although in this case it would appear the distance between the site of the accident and the Authority's employee parking area was less than two miles, in all other respects, the facts of this case bear striking similarity to those set forth above. Petitioner was free to leave the complex, and Lowden was free to access the complex in any number of ways. The Authority did not dictate the particular method either man chose and the risk occasioned by the use of the overpass both decided to employ was "no different than the risk from driving on any public roadway." Ibid.
In Manole, the defendant, arriving for the start of his work shift, drove his car to a designated parking area along a private road inside the shopping mall where he was employed. The plaintiff, employed by the same department store and leaving for the day, was a passenger in a van supplied by her employer to shuttle employees from the store to the designated parking area about one mile away. The vehicles collided and the plaintiff was injured. Although we determined "there [was] no question that at the time of the accident plaintiff had not yet left her employer's premises," we nonetheless concluded "that it [was] not her status . . . which [was] critical but rather that of [defendant]. If he was not yet within the scope of his employment when the vehicles collided, the fact that he was [a co-employee of plaintiff] would be a mere coincidence without legal significance. . . ." Manole, supra, 229 N.J.Super. at 142-43, 550 A.2d 1278. We determined the defendant was in fact "a half mile away from the designated lot," "in the process of leaving a public street and entering a service road, which itself was not within [his employer's] `control,'" when the collision occurred. Id. at 143, 550 A.2d 1278.
Thus, assuming arguendo that petitioner's status as an employee of the Authority continued as he left the complex and utilized the overpass, we are convinced that the compensation judge correctly determined Lowden was not petitioner's "fellow servant" at the time of the accident, and *813 therefore the Law Division action was not barred by N.J.S.A. 34:15-8.
That portion of the Act provides
If an injury . . . is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
[N.J.S.A. 34:15-8.]
The statute is only applicable, however, if the two-prong test of N.J.S.A. 34:15-1 is satisfied as to both employees. Mule v. N.J. Mfrs. Ins. Co., 356 N.J.Super. 389, 394, 812 A.2d 1128 (App.Div.2003). The compensation judge determined Lowden was returning to the maintenance complex for the sole purpose of picking up his paycheck. Even if this conduct was considered to have arisen from his employment, it is clear that he was not yet in the scope of his employment, having just turned off the access road and unto the overpass. In short, Lowden chose to return to Moorestown from East Brunswick even though he was not required to do so by his employer. Having left the union offices, he was no longer in the course of his employment as he drove south on the Turnpike.
Thereafter, he chose the manner and method by which to proceed, and he decided to access the maintenance complex in a manner not required by his employer, utilizing an overpass that presented only one of several ways to enter the actual premises. Under these peculiar facts, which are similar to those presented in Manole, Lowden was not in the scope of his employment as he drove over the overpass and collided with petitioner's vehicle. Therefore, the bar contained in N.J.S.A. 34:15-8 did not apply.
Affirmed.
NOTES
[1] Judge Axelrad did not participate in oral argument. However, the parties consented to her participation in the decision.