**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3377-16T2

JOSEPH MCNALLY,

     Plaintiff,

v.

MARYANN MERLINO, CHARLIE
HAMILTON, RICK YEATMAN,
DAVE DEMPSEY, RICHARD
PASSARELLA, DICK'S AUTO
SERVICE, D&J AUTO BODY
and RON PASSARELLA,

     Defendants.

_____

JOHN PHILIP MAROCCIA,

     Defendant/Third-Party
     Plaintiff,

v.

THOMAS GIANGIULIO, JR.,

     Third-Party Defendant.

_____

ROEDER HALBERT,

       Defendant/Third-Party
       Plaintiff-Appellant,

v.

WATERFORD TOWNSHIP,

       Third-Party Defendant-
       Respondent.

_____

Argued September 27, 2018 – Decided December 19, 2018

Before Judges Simonelli and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4138-11.

Paul Leodori argued the cause for appellant (Law Offices of Paul Leodori, PC, attorneys; Paul Leodori, on the briefs).

George J. Botcheos argued the cause for respondent.

PER CURIAM

Defendant/third-party plaintiff Roeder Halbert, a former member of the Waterford Township Committee, appeals from the May 7, 2013 Law Division order denying his motion for summary judgment to compel the Township to defend and indemnify him against a lawsuit filed by plaintiff Joseph McNally, a Township police officer. Halbert also appeals from the November 18, 2013

2

A-3377-16T2

order denying his motion for summary judgment to compel the Township to defend and reimburse him for his defense costs and the settlement amount he paid to McNally. We affirm.

I.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motions, viewed in the light most favorable to the Township, who opposed entry of summary judgment. See Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

On August 17, 2011, McNally filed a verified complaint against Halbert, Maryann Merlino, Charlie Hamilton, John Maroccia, Rick Yeatman, Dave Dempsey, Ron Passarella, unknown municipal entities, private individuals, and private business entities (collectively, defendants). Yeatmen, Dempsey and Passarella were not Township employees or officials. Although McNally identified Halbert and Hamilton as Committee members, Merlino as Mayor, and Maroccia as City Solicitor, he did not allege they acted within the scope of their employment or that their alleged wrongful conduct arose out of or in the course of the performance of their official duties.

McNally alleged in the first count of the complaint that sometime in late August or September 2010, Maroccia and Passarella were overheard outside the

A-3377-16T2

Township municipal building discussing establishing the Waterford Township Tea Party website (the website).[1] Maroccia allegedly told Passarella that Maroccia, Halbert, Merlino and Hamilton believed Passarella "would be the right person" to run the website and that Passarella would receive help and funding to establish the website.

McNally also alleged that the website, activated in October 2010, posted pictures of him along with many false and malicious statements, including that he was a criminal and "steroid crazed cop who almost beat a [seventy-one]-year-old man to death"; had an alcohol and drug problem; was the root of police corruption; ran an illegal business; stole from various employers; committed various types of fraud; assaulted multiple people; beat his wife; and engaged in police misconduct.

In his civil conspiracy claim in the second count, McNally alleged the following:

- defendants "conspired to commit a tort against McNally";

- defendants "conspired to intentionally and maliciously inflict emotional harm on McNally";

---

[1] McNally alleged that Yeatman and Dempsey were members of a private association that created a website "virtually identical" to the background for the website.

A-3377-16T2

- defendants "conspired to intentionally publish false and defamatory statements about McNally";

- defendants' "intentional and malicious actions . . . were designed to cause McNally harm, which they, in fact, did"; and

- defendants' "actions . . . were intentional, malicious and beyond the bounds of human decency, justifying the imposition of punitive damages."

In his intentional infliction of emotional distress claim in the third count, McNally alleged the following:

- defendants "intentionally and maliciously initiated extreme and outrageous conduct against McNally";

- defendants "intentionally and maliciously posted knowingly false information about McNally in a way that was deliberately designed to cause him harm";

- defendants "intentionally and maliciously created the website and posted knowingly false information about McNally knowing there would be a high degree of probability of severe emotional distress being caused to McNally";

- defendants' "intentional and malicious actions . . . caused McNally severe and on-going emotional harm and upset[,]" and "emotional distress so severe that no reasonable person could be expected to endure such distress";

- defendants' actions "were intentionally designed to cause McNally harm, which they, in fact, did"; and

- defendants' actions "were outrageous and beyond the bounds of human decency, justifying the imposition of punitive damages."

In his defamation claim in the fourth count, McNally alleged the following:

- defendants "conspired to publish knowingly false information and statements about McNally";

- defendants "intentionally made and posted many false and defamatory statements about McNally" and "made many false statements about McNally with a reckless disregard for the truth in order to harm McNally";

- defendants "conspired to create a website that posted multiple false statements about McNally in order to harm McNally, his family, and his reputation";

- defendants "maliciously made many false statements that were communicated through the website";

- defendants "were not concerned about the public good or serving the public; rather, they were concerned with maliciously destroying McNally's reputation in order to advance their own illicit purposes";

6

- "[t]he . . . statements publicized by [d]efendants . . .were knowingly false and maliciously made to cause McNally harm, which they in fact did";

- "[t]he malicious and false defamatory statement publicized by [d]efendants . . . caused McNally emotional harm and suffering";

- "[m]any of the malicious and false statements publicized by [d]efendants . . . constituted defamation per se"; and

- "[t]he intentional and malicious actions of [d]efendants . . . were outrageous and beyond the bounds of human decency, justifying the imposition of punitive damages."

In the fifth count, McNally alleged that unknown private individuals and private and municipal entities conspired with defendants to commit the acts he previously alleged.

On October 21, 2011, Halbert requested that the Township defend and indemnify him against McNally's claims pursuant to Chapter 15 of Township Ordinance No. 97-13 (Ordinance). Ordinance § 15-1 provides as follows, in pertinent part:

> The Township . . . shall provide the defense of any action, suit or proceeding, whether civil, criminal, administrative or investigative . . . against any public

7

employee[2] <u>because of any act or omission of that employee in the scope of his or her employment</u> and shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal. . . .

[(Emphasis added).]

Ordinance § 15-2(C) provides: "The Mayor and Committee . . . hereby provide[], under certain circumstances, for <u>the defense and indemnification</u> of officers, employees and servants <u>in the good faith performance of their duties and responsibilities</u>."  (Emphasis added).

Ordinance § 15-3(B) provides, in pertinent part:

> Whenever a civil action shall be brought against any person holding an office, position or employment with the Township . . . <u>for any action or omission arising out of or in the course of the performance of the duties of such office</u>, position or employment, the Township . . . <u>shall provide payment of that portion of any costs of defense</u> of said action not covered by a policy of insurance.  Whenever any insurance policy whose purpose is to provide the defense and indemnification of the Township . . . or its public employees is in dispute, the Township . . . will stand in the place of the insurance carrier, subject to all rights of subrogation, provide for the defense and indemnification of its employees as specified herein.  Said public employee has an affirmative duty, to be eligible for said defense

---

[2] Ordinance § 15-1 defines "public employee," in pertinent part, as "any elected or appointed official . . . [and] persons formerly holding office or employment, provided the events giving rise to a cause of action or claim hereunder conform to the requirements herein established."

and indemnification, to cooperate with the Township . . . in any and all of its efforts to resolve any disputed insurance coverage.

[(Emphasis added).]

Ordinance § 15-4 provides, in pertinent part, that "the Township['s] . . . authority to indemnify is limited to acts by public employees that are <u>within the scope of their employment and which are not criminal, fraudulent, malicious or instances of willful misconduct</u>."  (Emphasis added).  The Township reviewed the allegations in the complaint and denied Halbert's request based on Ordinance § 15-4.

On May 2, 2012, McNally filed an amended complaint adding defendants Richard M. Passarella, a private individual, and Passarella's private businesses, Dick's Auto Service and D&J Auto Body.  McNally alleged that the website "was set up and run out of the business known as 'Dick's Auto Service.'"

On September 5, 2012, Halbert filed an answer and third-party complaint against the Township, seeking declaratory judgment compelling the Township to defend and indemnify him and reimburse his defense costs.  Halbert subsequently filed a motion for summary judgment to compel the Township to provide a defense under Ordinance § 15-3(B).  He argued he was serving on the Committee when the alleged conduct occurred and McNally's allegation in the

defamation claim that Halbert was not concerned about the public good or serving the public suggested that Halbert's acts arose out of or in the course of the performance of his duties as a Committee member.

In an April 29, 2013 oral opinion, the motion judge denied the motion. The judge found that Halbert's acts were not within the scope of his employment or in the good faith performance of his duties and responsibilities as a Committee member.

On May 31, 2013, McNally executed a stipulation of dismissal with prejudice as to all claims against Halbert. Halbert claimed he paid money to McNally to settle, but did not disclose the amount (the undisclosed settlement amount). Thereafter, McNally testified at his deposition that it was his "opinion" Halbert, in his capacity as Committee member, conspired with Merlino, in her capacity as Mayor, to publish false information about McNally's conduct as a police officer, and intentionally inflict emotional distress and harm on and commit a tort against him. Based on McNally's deposition testimony, Halbert filed a second motion for summary judgment to compel the Township to defend and indemnify him and reimburse his defense costs and the undisclosed settlement amount.

10

In a November 15, 2013 oral opinion, the judge denied the motion. The judge found McNally's deposition testimony did not alter the judge's previous determination that Halbert was not acting within the scope of his employment or in the good faith performance of his duties and responsibilities as a Committee member. The judge determined that, although McNally testified it was his opinion Halbert acted in his capacity as a Committee member, the allegations in the complaint did not describe what action Halbert took in that capacity, but rather, described activities that were outside what Committee members would be expected to do in their official capacities.

## II.

On appeal, Halbert again relies on McNally's deposition testimony and argues the Township had a duty to defend and indemnify him under Ordinance § 15-3(B) because McNally's claims arose out of and related to Halbert serving on the Committee in 2010. Halbert also argues the Township had a duty to defend because McNally alleged a conspiracy between and among Halbert and other Township officials and municipal entities and "the breath of a civil conspiracy clearly comes within Halbert's acts or omissions arising out of or in the course of the performance of his duties as a member of the Waterford

Township Committee in 2010."[3]  Halbert cites no authority supporting this argument.[4]

Halbert also contends the Township had a duty to indemnify him because McNally's claims arose out of Halbert's conduct as a Committee member who McNally alleged was unconcerned about the public good or serving the public.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court.  Conley v. Guerrero, 228 N.J. 339, 346 (2017).  Thus, we consider, as the trial judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Surplus Ins. Corp. v. Nowell Amoroso, PA, 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

---

[3] We decline to address Halbert's additional argument that McNally's allegations were not actionable and were without merit.  The issue before us and the motion judge is whether the Township had a duty to provide a defense, which does not depend on the validity of McNally's claims.  See Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992) (holding that the duty to defend arises "irrespective of the claim's actual merit").

[4] Halbert cited to Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364-66 (App. Div. 1993); however, this case does not support this argument.

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). "To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion[.]" Puder v. Buechel, 183 N.J. 428, 440-41 (2005).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

"Although a municipality's informal interpretation of an ordinance is entitled to deference . . . the meaning of an ordinance's language is a question of law that we review de novo." Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 448 N.J. Super. 583, 595 (App Div. 2017) (quoting Bubis v. Kassin, 184 N.J. 612, 627 (2005)). "Similarly, the trial judge's determination as to the meaning of the ordinance is not entitled to any deference in our analysis." Ibid.

"[We] utilize[] the established rules of statutory construction to interpret a municipal ordinance." Paff v. Byrnes, 385 N.J. Super. 574, 579 (App. Div. 2006). "Therefore, 'an ordinance should be interpreted to effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Ibid. (quotation omitted) (quoting Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999)). "First, [we] must examine the language of the ordinance." Ibid. "If the language reveals a clear and unambiguous meaning, then that language controls." Ibid. "Alternatively, if the language is amenable to multiple interpretations, then [we] 'consider[] extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent.'" Ibid. (quoting Twp. of Pennsauken, 160 N.J. at 170).

The Ordinance is clear and unambiguous as to the Township's duty to defend and indemnify a public employee. The Township must defend public employees "because of any acts or omissions of that employee in the scope of his or her employment" (Ordinance § 15-1); "in the good faith performance of their duties and responsibilities" (Ordinance § 15-2(C)); and "for any action or omission arising out of or in the course of the performance of the duties of such office, position, or employment" (Ordinance § 15-3(B)).

The Township must indemnify public employees for acts that are "in the good faith performance of their duties and responsibilities" (Ordinance § 15-2(C)); "for any act or omission arising out of or in the course of the performance of the duties of such office, position, or employment" (Ordinance § 15-3(B)); and for "acts . . . within the scope of their employment and which are not criminal, fraudulent, malicious or instances of willful misconduct" (Ordinance § 15-4).

Accordingly, we must determine whether the Ordinance requirements have been met to compel the Township to defend and indemnify Halbert. McNally's post-complaint "opinion" as to whether Halbert was acting in his capacity as a Committee member is irrelevant to our analysis. We must focus

15

on the allegations in the complaint, the Ordinance requirements, and the applicable legal principles. See Voorhees, 128 N.J. at 173.

Scope of Employment

The term 'scope of employment' "refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." Carter v. Reynolds, 175 N.J. 402, 411 (2003) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 70 (5th ed. 1984)).[5] In New Jersey, 'scope of employment' is subject to analysis under the Restatement (Second) of Agency, which provides as follows, in pertinent part:

> an employee's conduct falls within the scope of employment if:
>
> (a)    it is of the kind he is employed to perform;

---

[5] For the first time in his reply brief, Halbert argues that his alleged conduct was within the scope of his employment because it arose out of his obligation under N.J.S.A. 40A:14-118 to oversee the Township's Police Department and discuss McNally's fitness as a police officer with other Committee members. We decline to address this argument, as Halbert did not raise it before the motion judge and it is not jurisdictional in nature nor does it substantially implicate the public interest, Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Further, it is improper to raise an argument for the first time in a reply brief. Goldsmith v. Camden Cty. Surrogate's Office, 408 N.J. Super. 376, 387 (App. Div. 2009).

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master;

. . . .

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

[Ibid. (quoting Restatement (Second) of Agency § 228 (Am. Law Inst. 1958)).]

"When the employee's conduct . . . originated in his or her effort to fulfill an assigned task, the act has been held to be within the scope of employment." Davis v. Devereux Found., 209 N.J. 269, 303 (2012). "Conversely, an employee's act is outside of the scope of his or her employment 'if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" Ibid. (quoting Restatement (Second) of Agency § 228(2) (Am. Law Inst. 1958)). Further,

[f]or conduct to be considered "of the kind" an employee was employed to perform, the conduct need not be only that which is expressly required and authorized by the employer. Rather, conduct can satisfy the "of the kind" inquiry where it is "closely connected" and "fairly and reasonably incidental" to what the employee is employed to do.

17

[Allard v. Eisenhauer, 971 F. Supp. 2d 458, 466 (D.N.J. 2013).]

Acts Arising Out of or in the
Course of Performance of Employment

Whether a particular incident arose out of and in the course of employment is comprised of a two-part question. Stroka v. United Airlines, 364 N.J. Super. 333, 339 (App. Div. 2003). First, there must be a time-and-place nexus between the employment and the incident. See Coleman v. Cycle Transformer Corp., 105 N.J. 285, 288-89 (1986). Second, there must be a causal connection between the employment and the incident itself. Ibid.

To demonstrate the causal connection between the employment and the incident, "[i]t must be established that the work was at least a contributing cause of the injury and that the risk of the occurrence was reasonably incident to the employment." Id. at 290. "[T]he 'but for' or positional-risk test" used for this analysis in New Jersey asks "whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere." Id. at 290-91 (quoting Howard v. Harwood's Restaurant Co., 25 N.J. 72, 83 (1957)). Given the circumstances at play here, for Halbert's conduct to fall within the course of his employment, he must have caused a risk "distinctly associated with the employment." See Valdez v. Tri-State Furniture,

18

374 N.J. Super. 223, 236 (App. Div. 2005). "[R]isks that result from a purely personal activity" are deemed to fall outside of the course of employment. Ibid.

## Good Faith

"Good faith conduct is conduct that does not 'violate community standards of decency, fairness or reasonableness.'" Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005) (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001)). We have defined good faith as "honesty of purpose and integrity of conduct without knowledge, either actual or sufficient to demand inquiry, that the conduct is wrong." Dunlea v. Twp. of Belleville, 349 N.J. Super. 506, 510 (App. Div. 2002). We have also found that "[r]eckless action may deny good faith" and "'[w]illful misconduct' . . . is more than an absence of 'good faith.'" Ibid. (quoting Marley v. Borough of Palmyra, 193 N.J. Super. 271, 294-95 (Law Div. 1983)).

## Malicious and Willful Misconduct

A "malicious act" is defined as "[a]n intentional, wrongful act done willfully or intentionally against another without legal justification or excuse." Black's Law Dictionary (10th ed. 2014).

"Willful misconduct" is defined as "[m]isconduct committed voluntarily and intentionally." Ibid. An act can be deemed willful misconduct "when it

19

'involv[es] deliberate and totally outrageous behavior.'" In re Rodriguez, 423 N.J. Super. 440, 452 (App. Div. 2011) (alteration in original) (quoting Moya v. City of New Brunswick, 90 N.J. 491, 504 n.8 (1982)). Furthermore, willful misconduct may be demonstrated by "a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 584 (2009) (quoting Berg v. Reaction Motors Div., Thiokol Chem. Corp., 37 N.J. 396, 414 (1962)).

Although McNally identified Halbert as a Committee member and alleged he conspired with the public official defendants and unknown municipal entities,[6] he also alleged that Halbert conspired with private individuals and private business entities who actually established and operated the website. More importantly, McNally did not allege that Halbert acted within the scope of his employment or in the course of the performance of his duties as a Committee member. McNally alleged that Halbert was not concerned about the public good or serving the public; rather, Halbert acted to "maliciously destroy[] McNally's reputation in order to advance [Halbert's] own illicit purposes."

---

[6] Notably, McNally did not identify the Township as one of the unknown entities.

McNally alleged acts that clearly were not within the scope of Halbert's employment or the performance of his duties as a Committee member. Conspiring to establish and establishing a website for the purpose of publicizing false and defamatory statements about a Township employee is not the type of activity that falls within the duties and responsibilities of a Committee member.

Further, the website was established and operated outside the time and place of Halbert's employment, and had no connection to and served no purpose whatsoever of the Township or the Township business or interests. Halbert's alleged conduct was not closely connected and fairly and reasonably incidental to what he was employed to do. Halbert's alleged motivation was purely personal and not associated with his employment or with purpose to serve the Township.

In addition, McNally alleged that Halbert's conduct was intentional, malicious, outrageous, and "beyond the bounds of human decency." This alleged conduct was not in the good faith performance of Halbert's duties and responsibilities as a Committee member and it constituted malicious or willful misconduct. For all of these reasons, the Township had no duty to defend or indemnify Halbert or reimburse his defense costs and the undisclosed settlement amount.

III.

Halbert argues that Ordinance § 15-3(B) must be construed in his favor and against the Township pursuant to the doctrine of contra proferentem. He also argues the Township must reimburse him for defense costs and the undisclosed settlement amount based on breach of contract and estoppel. We have considered these arguments in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION