725 A.2d 135 (1999)
319 N.J. Super. 342
Luigia G. CANNUSCIO, Petitioner-Appellant,
v.
CLARIDGE HOTEL AND CASINO, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1999.
Decided March 15, 1999.
*136 Carmine J. Taglialatella for petitioner-appellant (Press & Long, attorneys; Mr. Taglialatella, on the brief).
Francis T. Giuliano, Ramsey, for defendant-respondent.
Before Judges KING, NEWMAN and FALL.
The opinion of the court was delivered by KING, P.J.A.D.
I
On July 24, 1995 Luigia G. Cannuscio (petitioner) filed a workers' compensation claim petition in the Division of Workers' Compensation in Atlantic City. Petitioner alleged that she fractured her left hip and sustained other injuries as a result of an accident which occurred on May 1, 1995. She was assaulted on a public sidewalk after picking up her paycheck at her employer's administration building after her shift. The judge found that the incident did not arise out of or in the course of her employment.
On this appeal petitioner raises two claims of error:
I. WHETHER THERE WAS SUFFICIENT CREDIBLE EVIDENCE ON THE RECORD TO SUPPORT THE TRIAL JUDGE'S FACTUAL CONCLUSION *137 THAT PETITIONER-APPELLANT CANNUSCIO WAS NOT ASSAULTED ON DEFENDANT-RESPONDENT CLARIDGE'S PREMISES.
II. WHETHER PETITIONER'S INJURIES OCCURRED ON HER EMPLOYER'S PREMISES AND AROSE OUT OF OR IN THE COURSE OF HER EMPLOYMENT.
We find no error and affirm.

II
Petitioner had been employed as a cook for eleven years by the Claridge Hotel and Casino in Atlantic City. On Monday, May 1, 1995 she worked a shift from 7 a.m. to 3 p.m. After finishing her shift she changed her clothes, "clocked out" and at about 3:15 p.m. left the Claridge Hotel and Casino building and proceeded north across Indiana Avenue to Claridge's Administrative Office Building to pick up her paycheck. She routinely picked up her pay check at the Administrative Office Building on Mondays after her shift, although she had the option of picking up her check on Sundays or having it "direct-deposited" into her bank account. She was not permitted to pick up her check during her shift.
After picking up her paycheck, petitioner left the Administrative Office Building and walked west toward Pacific Avenue. While she was walking, several young men ran from behind her, grabbed her by the sleeve, knocked her to the ground, and attempted to take her pocketbook. The assailants did not succeed in stealing petitioner's pocketbook. The distance between the point at which she was first assaulted and where she fell to the ground was a few feet.
After she was knocked to the ground, petitioner's assailants ran away and she yelled for help. She did not move on her own but after a few minutes a passerby and an employee of Claridge came to help, placing her in a chair on the sidewalk.
At about 3:40 p.m. Officer Tom Sparks of the Atlantic City Police Department was dispatched to the scene. Officer Sparks found petitioner sitting in a chair on the sidewalk and asked if she wanted to go to the hospital. She said she did and in about fifteen minutes an ambulance came to take her to the hospital.
At trial John Heim testified that he was employed by Claridge as a supervising EMT on May 1, 1995. He arrived on the scene with Wendy Morris, another Claridge EMT, at about 3:35 p.m. and found petitioner sitting in a chair about forty feet east of Pacific Avenue. Claridge's security supervisor, William Hurley, was at the scene along with Officer Sparks. Heim also testified that he conducted a patient assessment and petitioner complained of pain in her right hip.
Kelly McDermott, who works in the payroll department of Claridge, testified that employees have the option of receiving a "live" paycheck or a deposit of wages through a "direct deposit." According to McDermott, the direct-deposit option had been available for ten years; all employees are eligible for this option and are told so before commencement of work.
In a written opinion Judge Dailey found that petitioner was assaulted by two juveniles on the public sidewalk in front of the Mid-Town Motel on Indiana Avenue, west of the location of Claridge's Administrative Office Building. Judge Dailey found that petitioner was not on Claridge's premises, or in front of it, or at a location under its ownership or control when the criminal assault occurred. The judge stated that petitioner clearly had "clocked out" and was not performing any work duties when assaulted. She concluded that the incident did not arise out of or in the course of petitioner's employment.

III
When error in factfinding of a judge or administrative agency is alleged, the scope of appellate review is limited. We will decide whether the findings made could reasonably have been reached on "sufficient" or "substantial" credible evidence present in the record considering the proofs as a whole. We give "due regard" to the ability of the factfinder to judge credibility. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); De Angelo v. Alsan Masons, Inc., 122 *138 N.J.Super. 88, 89-90, 299 A.2d 90 (App.Div.), aff'd o.b., 62 N.J. 581, 303 A.2d 883 (1973). An appellate court has the power to review the factual determinations of a trial judge for any cause, criminal or civil, involving issues of fact not determined by the verdict of a jury and to make new or amended findings, but great deference must be given to the determinations of the trial judge. State v. Johnson, 42 N.J. 146, 158-59, 199 A.2d 809 (1964). Appellate review does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered at trial. Id. at 161, 199 A.2d 809. Deference must be given to those findings of the trial judge which are substantially influenced by her opportunity to hear and see witnesses and to have the feel of the case. Ibid. "When the reviewing court is satisfied that the findings meet this criterion, its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal." Id. at 162, 199 A.2d 809.
Petitioner argues Judge Dailey's conclusion that she was assaulted in front of the Mid-Town Motel and not in front of Claridge's administrative office premises is not supported by credible evidence on the record. Petitioner also remarks that Claridge's witness, John Heim, arrived at the scene of the incident about twenty minutes after the assault. As a result, petitioner argues that the judge could not reasonably conclude, based on the record, that petitioner was placed in the chair on the sidewalk at the point where the assault occurred, in front of the Mid-Town Motel.
As stated in her written opinion, Judge Dailey found that petitioner was assaulted by juveniles on the public sidewalk in front of the Mid-Town Motel, a property up the street to the west from Claridge's Administrative Office Building where she picked up her paycheck. The judge based her decision on where petitioner was assisted to a chair after the incident occurred. Judge Dailey stated that petitioner was assaulted in front of the Mid-Town Motel because "[t]here would be no logical sense in making an injured party walk or be carried that distance to another location." Judge Dailey concluded that petitioner was not assaulted on Claridge's premises, or a location under its control or on the sidewalk in front of its administrative building; the assault happened on a public sidewalk in front of another business, the Mid-Town Motel.
Petitioner testified at trial that she did not move after the assault and was lying on the ground at the point where the assault occurred until she was finally placed in a chair on the sidewalk by a Claridge employee. When EMT Heim arrived on the scene he found petitioner in a chair about forty feet "in from Pacific Avenue," placing petitioner directly in front of the Mid-Town Motel. Heim also testified that when he arrived on the scene he investigated whether petitioner had been moved and determined that she was moved only from the ground into a chair where Heim was standing, on the sidewalk in front of the Mid-Town Motel. In light of this testimony by petitioner and Heim, Judge Dailey reasonably found, on sufficient credible evidence in the record, that Cannuscio was not assaulted in front of Claridge's Administrative Office Building but rather the assault occurred on the public sidewalk in front of the Mid-Town Motel.

IV
Petitioner next argues that the assault, which occurred after she picked up her paycheck, arose out of her employment because the attack would not have occurred under the normal circumstances of everyday life outside of her employment. She also asserts that the assault occurred during the course of her employment because Claridge obtains a benefit from her working as a cook and designating the place where she must pick up her paycheck. The language of the Workers' Compensation Act must be liberally construed in favor of employees. Close v. Kordulak Bros., 44 N.J. 589, 604, 210 A.2d 753 (1965); Cressey v. Campus Chefs, Div. of CVI Service, Inc., 204 N.J.Super. 337, 342-43, 498 A.2d 1274 (App.Div.1985). The Supreme Court has emphasized that the Workers' Compensation Act is remedial social legislation which should be liberally construed *139 so that its beneficent purposes are accomplished. Shaudys v. IMO Industries, Inc., 285 N.J.Super. 407, 410, 667 A.2d 204 (App. Div.1995) (citing Fiore v. Consol. Freightways, 140 N.J. 452, 465, 659 A.2d 436 (1995)); Torres v. Trenton Times Newspaper, 64 N.J. 458, 461, 317 A.2d 361 (1974).
N.J.S.A. 34:15-1 of New Jersey's Workers' Compensation Act provides:
When personal injury is caused to an employee by accident arising out of and in the course of employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer, provided the employee was himself not willfully negligent at the time of receiving such injury, and the question of whether the employee was willfully negligent shall be one of fact to be submitted to the jury, subject to the usual superintending powers of a court to set aside a verdict rendered contrary to the evidence.

[Emphasis added.]
Regarding the phrase "arising out of and in the course of employment," the Supreme Court determined that
"[t]he task of construction is made easier by breaking the phrase in half, with the `arising out of portion construed to refer to causal origin, and the `course of employment' portion to refer to time, place, and circumstances of the accident in relation to the employment."
[Shaudys v. IMO Industries, Inc., 285 N.J.Super. at 410, 667 A.2d 204 (citing Coleman v. Cycle Transformer Corp., 105 N.J. 285, 288, 520 A.2d 1341 (1986) (quoting Dean Larson at 1 A. Larson, Workmen's Compensation Law, section 6.10. (1985))).]
However, "even though the test must be independently applied and met, it should never be forgotten that the basic concept of compensation coverage is unitary, not dual, and is best expressed in the term work connection." Ibid. (citing Coleman v. Cycle Transformer Corp., 105 N.J. at 289, 520 A.2d 1341 (quoting Larson at section 6.10)). Under the Workers' Compensation Act "employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer." N.J.S.A. 34:15-36. This definition describing when employment begins and ends is known as the "premises rule" and it distinguishes between an accident that occurred on the employer's premises and one which did not. Ramos v. M.F. Fashions, Inc., 154 N.J. 583, 591, 713 A.2d 486 (1998). The pivotal questions under the premises rule are (1) where was the situs of the accident, and (2) did the employer have control of the property on which the accident occurred. Kristiansen v. Morgan, 153 N.J. 298, 316-17, 708 A.2d 1173 (1998). "Control" as it is defined in the Workers' Compensation Act differs from control in the "formal property law sense" because it is more expansive. Ramos v. M.F. Fashions, Inc., 154 N.J. at 592, 713 A.2d 486 (citing Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 105, 543 A.2d 45 (1988) (finding control under Workers' Compensation Act despite the absence of control according to property law)).
In Livingstone v. Abraham & Straus, Inc., 111 N.J. at 91, 543 A.2d 45, the petitioner was an employee of defendant-appellant Abraham & Straus, an "anchor tenant" in the Monmouth Mall. One morning petitioner parked her car in the far corner of the mall parking lot where all employees were instructed to park. As petitioner walked from her car to the employees' entrance of Abraham & Straus she was hit by a car driven by a fellow employee of the company and sustained injuries. Abraham and Straus did not rent or maintain any portion of the mall parking lot but paid for general access to the mall parking lot as part of its rental agreement. Instructions telling employees to park at the outermost edge of the mall parking lot were posted in writing at the employees' entrance. The Supreme Court held that regardless of whether Abraham and Straus' parking directive was "enforced" by its security guards, petitioner's workday commenced when she arrived in her car at the section of the mall lot adjacent to the employer's premises, placing her in the course of employment when the accident occurred. *140 Id. at 104, 543 A.2d 45. The Court also found that the designation of a portion of the parking lot for use by employees effectively made the parking lot the equivalent of an employer-owned lot. Id. at 104-05, 543 A.2d 45. The Court found the "control" portion of N.J.S.A. 34:15-36 satisfied since Abraham & Straus had the ability to direct its employees to park in the designated area and appropriated a portion of the mall parking lot for its own use. Id. at 105, 543 A.2d 45. Thus, the Court held petitioner's injuries compensable as consistent with the fundamental purposes of workers' compensation legislation.
In Ehrlich v. Strawbridge & Clothier, 260 N.J.Super. 89, 90, 615 A.2d 286 (App.Div.1992), certif. denied, 133 N.J. 435, 627 A.2d 1141 (1993), petitioner Norma Ehrlich "rang out" at the end of her work day and left for home through a door designated by Strawbridge & Clothier for the exclusive use of employees. The door lead to a metal staircase which went to an exterior sidewalk that Ehrlich had to use to reach the parking lot where her car was located. After taking a few steps from the staircase, Ehrlich slipped and fell on the ice. The court held Ehrlich's accident compensable. Id. at 92, 615 A.2d 286. In reaching its decision the court stated that although the staircase and adjacent sidewalk leading from the employee door was not part of the store premises, Strawbridge & Clothier exercised control over both the staircase and sidewalk in conducting its business since it required employees to enter and exit the store by traversing this area.
In Novis v. Rosenbluth Travel, 138 N.J. 92, 649 A.2d 69 (1994), petitioner Novis sustained injuries while walking across the only sidewalk leading from an office-building parking lot to the entrance of the office building in which her employer's branch office was located. Novis sustained her injuries when she slipped and fell on ice and snow which accumulated on the sidewalk. The Court distinguished Novis from Livingstone v. Abraham & Straus, Inc., 111 N.J. at 89, 543 A.2d 45 (1988), on the ground that unlike the situation in Novis, the employer in Livingstone directed its employees to park in a designated area of the mall parking lot. Id. at 95, 543 A.2d 45. As a result the court found petitioner Novis' injuries non-compensable, holding that the employer, Rosenbluth Travel, did not exercise control over any portion of the parking-lot building adjacent to the office building, or over the sidewalk leading to the office-building entrance. Id. at 96, 543 A.2d 45.
Most recently, in Kristiansen v. Morgan, 153 N.J. at 302, 708 A.2d 1173, Kristiansen, decedent, was a bridge operator employed by New Jersey Department of Transportation (NJDOT) and was assigned to the Victory Bridge which spans the Raritan River from Perth Amboy to Sayerville, New Jersey. NJDOT employees assigned to the Victory Bridge regularly parked their cars in a lot under the bridge which is owned by Hess Oil Company. In order to reach this parking lot, employees of NJDOT descend a wooden staircase and walk under the bridge. Although employees assigned to the bridge are not required to park in the Hess parking lot, they have permission from NJDOT and Hess to park there. Additionally, two parking lots were provided by NJDOT. To get to either the Hess or NJDOT parking lots, employees had to walk north over the bridge to reach their cars. One evening as decedent was walking over the bridge toward the wooden staircase leading to the parking lot, he was struck and killed by a car. The driver of the car was not an employee of NJDOT. Decedent's wife then instituted a wrongful death action in Superior Court and NJDOT moved for summary judgment arguing that because decedent's injuries arose out of or in the course of his employment, the Division of Workers' Compensation had sole jurisdiction over the case. Decedent's wife maintained that the accident did not arise out of and in the course of employment because it did not occur in an employer-controlled area. Id. at 315, 708 A.2d 1173.
The Supreme Court found that the accident occurred on the roadway surface of the bridge where decedent worked and not in one of the employee-used parking lots but held the claim was compensable under the Workers' Compensation Act. Id. at 317, 708 A.2d 1173. In reaching this result the Court stated that the case was no different from the case of an employee who "punches out" *141 on the time clock at the front entrance and is injured while walking through the plant to reach his car parked in a rear parking lot.
In the case before us, petitioner was assaulted and knocked down onto the public sidewalk by the juveniles after she had left Claridge's Administrative Office Building. When EMT Heim arrived at the scene, petitioner was sitting in a chair on the sidewalk located about forty feet east of Pacific Avenue, a location on Indiana Avenue directly in front of the Mid-Town Motel, situate at the corner of Indiana and Pacific Avenues. Unlike the situations in Livingstone, Ehrlich, and Kristiansen, petitioner's injury occurred on a common public sidewalk and not in the area of or leading to a designated employee parking lot. Claridge exercised no control over the public sidewalk where the assault occurred; it did not maintain the sidewalk area in the security sense or pay to use it, as the employer did in Livingstone. Petitioner in the case before us is in a circumstance similar to the petitioner in Novis v. Rosenbluth Travel, 138 N.J. at 95-96, 649 A.2d 69, where the Supreme Court denied compensability for an accident on a public sidewalk.
Petitioner's reliance on Ramos v. M.F. Fashions, Inc., 154 N.J. at 583, 713 A.2d 486 (1998), is not helpful. In Ramos a worker suffered injuries when he fell down an elevator shaft in the building in which his employer was a tenant. Ramos would typically arrive at work an hour early each day at 7 a.m. and read the newspaper, drink coffee, and socialize before he "punched in" at 8 a.m. On the day of the accident, Ramos walked to the elevator and upon stepping into the elevator, plunged eight feet down the shaft and was seriously injured. The Supreme Court ruled that Ramos' employer, M & F Fashions, Inc., had "control" of the freight elevator because its employees rode the elevator to transport fabric and clothing and also because employees used the elevator for ingress and egress to the business. Id. at 593-94, 713 A.2d 486. The Court found that Ramos' injury was compensable.
In the present case, unlike in Ramos, Claridge did not exercise any control over the sidewalk; the sidewalk leading to and in front of the Mid-Town Motel was not used for business purposes in the same manner the elevator was used in Ramos. Although the sidewalk generally was used by pedestrians coming to and from Claridge's Administrative Office Building, this sidewalk was also used by the general public.
Indeed, non-compensability would result even if the assault had occurred on the public sidewalk in front of the Claridge's Administrative Office Building. Once petitioner left the Claridge property and entered the public way to go home, the Workers' Compensation Act did not apply. The judge properly concluded that the assault did not occur on Claridge's premises and did not arise out of or in the course of petitioner's employment.
Affirmed.