**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4979-15T2

MONMOUTH HILLS, INC.,

    Plaintiff-Respondent,

v.

LAURIE LECLAIR,

    Defendant-Appellant.

_____

Argued December 13, 2018 – Decided August 9, 2019

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket Nos. L-2137-13, L-2138-13 and L-2139-13, and Chancery Division, Docket Nos. C-000117-11, C-000181-11 and C-000112-12.

Larry S. Loigman argued the cause for appellant.

Gregg S. Sodini argued the cause for respondent (Cutolo Barros LLC, attorneys; Gregg S. Sodini, on the brief).

PER CURIAM

Defendant Laurie LeClair appeals from the April 3, 2013 and June 26, 2013 orders of the Chancery Division granting partial summary judgment in favor of plaintiff Monmouth Hills, Inc. (MHI) in its action to collect common area maintenance charges and fees, as well as the June 30, 2016 final judgment of the Law Division dismissing LeClair's counterclaims against MHI and awarding MHI damages, attorney's fees, and costs.  We affirm.

I.

The following facts are derived from the record.  LeClair is the owner of residential property in the Monmouth Hills section of Middletown Township. Monmouth Hills was created as a private community through the efforts of several investors who, in 1895, formed Water Witch Club (Water Witch), a New Jersey corporation.  Water Witch purchased a track of land overlooking Sandy Hook and New York City, which it subdivided and sold in forty-one parcels for the construction of private residences.  Purchasers of the parcels became members of Water Witch through the issuance of shares in the corporation. Water Witch retained ownership of the streets and other common property in the development, including a clubhouse it constructed.

An August 4, 1944 amendment to Water Witch's certificate of incorporation changed the corporation's name to MHI.  On December 4, 1966,

2

an amendment to MHI's certificate of incorporation changed the objectives of the corporation, granting it, in relevant part, responsibility for the management, administration, and maintenance of the common property of the community, including the responsibility to pay local property taxes on the common property.

On June 24, 1972, MHI adopted bylaws authorizing and directing its board of directors to establish maintenance charges and fees to be collected periodically from homeowners for the privileges and services provided by the corporation.  The bylaws provide that all maintenance charges and fees shall be collectible as a debt and shall be a lien on the relevant property.  In addition, a subsequent amendment to the bylaws provides that if MHI is compelled to seek collection of unpaid maintenance charges and fees it is entitled to attorney's fees and costs.  MHI's bylaws were not recorded until 2011.

LeClair purchased her property on April 30, 2001.  By purchasing the property, LeClair became a member of MHI and obtained one share of stock in the corporation.  At the closing, she was issued a deed that stated that "[t]he land and premises are conveyed SUBJECT to the Rules, Regulations and By-laws of [MHI], a New Jersey Corporation."  In addition, the deed contains a certificate of compliance with the rules, regulations and bylaws of MHI.

A-4979-15T2

Almost immediately after purchasing her home, LeClair became involved in the community, attended community meetings, and joined committees. She was present at the annual meeting of the general membership of MHI on December 9, 2001, at which a long-range planning report for the roads and other infrastructure of the community was submitted and discussed. At the meeting, the chairman of the road committee thanked LeClair for her help performing work for the Committee.

In addition, within a year of purchasing the home, LeClair received and paid an invoice from MHI for maintenance charges for the period July 1, 2001 to December 31, 2001. The invoice stated there was an increase in the annual maintenance charges because of road maintenance and improvements and the increase was approved at a special meeting of the membership of MHI. LeClair admitted receiving periodic maintenance account summaries from MHI beginning in January 2002, indicating expenses for road maintenance, snow removal, and road capital improvements.

For many years thereafter, LeClair received periodic invoices from MHI for maintenance charges. She paid the charges without objection. In addition, LeClair was elected secretary of MHI and was intimately involved in corporate

A-4979-15T2

operations and decision making. During that time, she repeatedly relied on the MHI bylaws and accepted the corporate structure and authority of MHI.

In 2007, LeClair stood for reelection to an MHI office. She was defeated. Shortly after her election loss, LeClair stopped paying the periodic MHI maintenance charges. Although LeClair continued to enjoy the services provided by MHI, including the use of the roadways in the community, she determined that MHI lacked the authority to assess charges for those services.

On November 4, 2010, and December 6, 2010, MHI filed notices of lien against LeClair's property for unpaid maintenance charges and fees. On May 6, 2011, MHI filed a complaint against LeClair in the Special Civil Part seeking collection of $8,632.84 in unpaid maintenance charges and fees. MHI also sought the award of attorney's fees and costs.[1]

On July 22, 2011, LeClair filed an answer and counterclaim denying liability for the charges and fees and alleging: (1) because her property was not part of a condominium regime, homeowners' association, or planned unit development, MHI had no legal authority to exercise control over, or to assess

---

[1] MHI filed similar collection actions against other property owners who did not pay maintenance charges and fees. Those property owners filed answers and counterclaims similar to those filed by LeClair. All of the complaints and counterclaims were consolidated. Only the claims raised in the LeClair matter are before us.

charges and fees against, her or her property; (2) MHI's recorded liens against her property were unauthorized and invalid and were intentional slander of her title; and (3) MHI committed various acts of malfeasance and waste to the detriment of its shareholders. LeClair sought a declaratory judgment that she held title to her property free and clear of any assessments, fees, charges, liens, or restrictions imposed by MHI; the appointment of a receiver for MHI; and the award of damages, attorney's fees, and costs.

The trial court bifurcated the parties' claims. All equitable claims, including the right of MHI to assess and collect charges and fees, and LeClair's defenses with respect to MHI's assessment and collection of charges and fees, were transferred to the Chancery Division. The remaining claims were transferred to the Law Division. The trial court vacated, without prejudice, the liens MHI filed against LeClair's property pending the determination of MHI's authority to assess charges and fees against her.

A five-day evidentiary hearing was held in the Chancery Division on the parties' cross-motions for summary judgment. Having heard the testimony of LeClair and other witnesses, Judge Thomas W. Cavanagh, Jr., issued a comprehensive oral opinion. The judge viewed LeClair's claims as "a dead-on challenge to the existence of [MHI] and [its] right to exist and govern" and

concluded: (1) MHI was duly incorporated and properly organized under the laws of New Jersey; (2) LeClair received adequate notice of MHI's authority to assess maintenance charges and fees against her, and her testimony that she thought MHI was a social club was entirely lacking in credibility and was contradicted by evidence adduced at trial, including the deed to her property, her significant involvement in MHI's meetings and other activities, her election and attempt at reelection to office at MHI, and her longtime payment without objection of maintenance charges periodically assessed against her by MHI until she lost reelection; and (3) MHI held title to the common property of the development, including the streets, which it is responsible to maintain.

On April 3, 2013, Judge Cavanagh entered an amended order granting summary judgment in favor of MHI with respect to its authority to assess and collect maintenance charges and fees against LeClair. In addition, the amended order entered judgment in favor of MHI and against LeClair in the amount of $17,658.71. On June 26, 2013, Judge Cavanagh entered an order denying LeClair's motion for reconsideration but modifying the April 3, 2013 order to remove the award of a specified amount of damages to MHI, which the judge found to have been prematurely entered. LeClair subsequently filed an amended counterclaim alleging additional acts of malfeasance by MHI.

7

After a six-day bench trial in the Law Division, Judge Katie A. Gummer issued a thorough oral opinion in favor of MHI on all remaining claims. The judge concluded that: (1) the witnesses called on behalf of LeClair were less credible than the witnesses called on behalf of MHI; (2) the opinion of LeClair's expert witness offered to prove corporate malfeasance by MHI was "utterly lacking in credibility" and contradicted by evidence in the record; (3) LeClair failed to prove that the MHI bylaws were not properly adopted; (4) a number of LeClair's claims of corporate malfeasance were shareholder derivative claims improperly alleged as individual shareholder claims and, therefore, subject to dismissal; (5) even if those claims were not properly dismissed as shareholder derivative claims, LeClair failed to prove malfeasance or a violation of the business judgment rule; and (6) LeClair had not established an entitlement to damages, the appointment of a receiver, or any other relief.

On June 30, 2016, Judge Gummer entered an order dismissing LeClair's counterclaim, awarding MHI $18,786.96 in damages against LeClair for unpaid maintenance charges, fees and interest, and awarding MHI $45,966.40 in attorney's fees and costs.

This appeal followed. LeClair effectively repeats the legal arguments she raised in the trial court. We stayed enforcement of the June 30, 2016 judgment.

A-4979-15T2

II.

We begin our analysis with LeClair's appeal of the April 3, 2013 and June 26, 2013 orders granting partial judgment to MHI. We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J. Super. at 167 (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 529-30 (1995)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill, 142 N.J. at 523-24.

Having carefully reviewed LeClair's arguments in light of the record and applicable legal principles, we conclude that there is ample evidence supporting

the trial court's findings of fact, conclusions of law, and award of partial summary judgment to MHI. We therefore affirm the April 3, 2013 and June 26, 2013 orders for the reasons stated by Judge Cavanagh in his thorough and well-reasoned oral opinion.

We turn to LeClair's appeal of the June 30, 2016 final judgment entered after trial. We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). "Appellate review does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We thoroughly reviewed LeClair's arguments in light of the trial record and applicable legal principles and affirm the June 30, 2016 judgment for the reasons stated by Judge Gummer in her thoughtful and well-reasoned oral opinion. We also conclude that to the extent LeClair raises arguments before us

10

that were not raised in the trial court those arguments are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).  In addition, we generally will not consider issues that were not raised before the trial court and that are not jurisdictional in nature or substantially implicate the public interest.  <u>Zaman v. Felton</u>, 219 N.J. 199, 226-27 (2014).

Affirmed.  The stay of enforcement of the June 30, 2016 judgment is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4979-15T2