**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4967-16T2

CHILDREN OF AMERICA, INC.,
CHILDREN OF AMERICA
(PARSIPPANY), LLC and
VISITEL ENTERPRISES, CORP.,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

PAVILION PROPERTIES, LLC and
MICHAEL PUSCHAK, Individually,

      Defendants-Respondents/
      Cross-Appellants,

and

DOODLE BUGS! CHILDREN'S
CENTER, DB 70 OLD
BLOOMFIELD, LLC, and
ANTHONY INSINNA, individually,

      Defendants.

_____

Argued October 18, 2018 – Decided August 16, 2019

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1056-16, and Chancery Division, Docket No. C-000100-15.

Joseph V. Meyers argued the cause for appellants/ cross-respondents.

Robyne D. LaGrotta argued the cause for respondents/ cross-appellants (LaGrotta Law, LLC, attorneys; Robyne D. LaGrotta, of counsel and on the brief).

PER CURIAM

Plaintiffs Children of America, Inc. (COA), Children of America (Parsippany), LLC (COA Parsippany), and Visitel Enterprises, Corp. (Visitel) (collectively COA Parsippany) appeal from the May 30, 2017 order of the Law Division entered after trial of this commercial lease dispute. Defendants Pavilion Properties, LLC (Pavilion) and Michael Puschak cross-appeal from a September 30, 2015 order of the Chancery Division setting the lease commencement date. We affirm the May 30, 2017 order in part, reverse the September 30, 2015 order, and remand for further proceedings.

I.

The following facts are derived from the record. Pavilion is the owner of property in Morris County (the subject property) on which the outside shell of an office building was constructed in 2005. Puschak is a member of Pavilion.

A-4967-16T2

COA operates child care centers. Visitel, which shares principals with COA, is a Florida real estate broker. At the times relevant to this appeal, Visitel did not have a New Jersey real estate broker's license. In May 2007, Visitel identified the subject property as a potential site for a COA child care center. Visitel alleged that Pavilion agreed to pay it a commission for brokerage services.

COA Parsippany, a wholly-owned subsidiary of COA, was formed for the purpose of leasing the subject property and operating a child care center on the parcel. On July 29, 2007, COA Parsippany and Pavilion entered into a fifteen-year lease for the subject property. Pavilion agreed to provide COA Parsippany with a "turnkey" facility built to meet architectural plans and specifications supplied by COA Parsippany for the operation of a child care center. The plans included a playground to be constructed by Pavilion.

According to the lease, its commencement date

> shall not be more than (i) thirty (30) days after the unconditional Certificate of Occupancy [(CO)] (including the completion of the playground per the plans and specifications) is issued or (ii) all governmental approval[s] have been received by Tenant to operate a child care facility.

According to the lease, "[i]it is understood that Landlord will get the Certificate of Occupancy and that Tenant will obtain all state and local approvals to operate a day care center by the appropriate governmental authority."

The lease provides Pavilion is obligated to obtain the CO within 270 days of issuance of a building permit. After the 270th day, Pavilion incurs a penalty of $500 per day for every day until a CO, temporary or permanent, is obtained. However,

> [t]his period of 270 days shall be extended when delays are out of the landlord's control. Items of circumstances deemed out of the Landlord's control include but are not limited to weather delays, acts of God, government delays, and or actions, availability of specific material, changes by tenant, labor disputes, fire, unavoidable casualties, unusual delay of delivers [sic] and legal actions.

The rent for the first twelve months of the lease is considerably less than the annual rent for the second through fifteenth years. Once the lease commences, COA Parsippany is responsible for "all ad valorem taxes, real estate taxes and assessments and other charges which may be levied, assessed or charged against the real estate and improvements . . . ." Pavilion also agreed to pay COA Parsippany $70,000 for furniture, fixtures, and equipment (FF&E) necessary for a child care center. The parties agreed that COA Parsippany

4

provided a slight credit through a change order, which reduced the amount due from Pavilion to $62,290.

The lease provides that Visitel's commission will be set forth in a separate agreement between Pavilion and Visitel. A letter signed by Puschak acknowledges that Pavilion will pay Visitel $75,144.22 to be paid in twelve monthly payments of $1,043.69 beginning on the commencement of the lease, followed by twenty-four monthly payments of $2,609.

The lease also contained a three-year limited corporate guarantee from COA. Finally, the lease provides that "[i]f any action or lawsuit is brought to enforce any of the provisions of the [l]ease, the prevailing party to any such lawsuit shall be entitled to reimbursement of all reasonable costs and expenses, including reasonable attorney's fees from the nonprevailing party at pre-trial, trial, and all appellate levels."

Pavilion engaged in a protracted process to gain municipal approval to construct a child care center on the subject property, including the initiation of two lawsuits. Ultimately, the township planning board approved the project on November 2, 2011, more than four years after the lease was signed.

During the four-year period, the Site Remediation Reform Act (SRRA), N.J.S.A. 58:10C-1 to -29, became effective. The SRRA provides that a license

to operate a child care center will not be issued until the applicant obtains a Response Action Outcome (RAO) letter from the New Jersey Department of Environmental Protection (DEP) stating that no further action is needed to remediate contamination on the property where the child care center will be located.

COA Parsippany provided Pavilion with the architectural drawings on March 22, 2012. On June 8, 2012, an Executive Vice President of COA, sent Pavilion a letter with a list of required vendors for the development of the site. The letter noted the requirement to have a licensed site remediation professional perform a preliminary assessment (PA) of contamination on the subject property for purposes of securing an RAO. On December 19, 2012, Adams, Rehmann & Heggan Associates, Inc. (ARH) sent Puschak a proposal to perform a PA to determine whether or not the subject property was contaminated.

On January 20, 2013, COA Parsippany sent Puschak a letter stating that it was Pavilion's obligation to obtain an RAO from the DEP, that doing so would be a lengthy process, and an RAO was a condition to obtain a child care center license. Puschak objected to Pavilion having to obtain the RAO, arguing it was COA Parsippany's obligation. However, he ultimately agreed to have Pavilion obtain the RAO.

6

On February 28, 2013, the township issued a building permit. Construction commenced immediately. On the same day, ARH sent Puschak a proposal regarding the State's soil sampling requirements with respect to historic fill discovered on the subject property that needed to be addressed to obtain an RAO. Puschak was unable to hire ARH due to scheduling. On June 13, 2013, Brinkerhoff Environmental Services, Inc. (Brinkerhoff) sent Puschak a proposal to provide environmental services at the subject property. Puschak subsequently hired Brinkerhoff to provide those services.

On August 14, 2014, Brinkerhoff provided Puschak with an estimate for continued services based upon the findings of the PA report. The letter outlined several outstanding items that needed to be completed for an RAO to be issued.

On August 21, 2014, COA Parsippany applied for a license to operate a child care center with the New Jersey Department of Children and Families (DCF). The application was made in anticipation of receipt of a CO for the building.

On September 19, 2014, the township issued a temporary CO for the building. This was 298 days past the 270-day penalty provision in the lease. Despite having received a temporary CO for the building, COA Parsippany was

unable to occupy the building because it did not have an RAO or a child care center license. The final CO was issued on November 13, 2014.

On March 4, 2015, COA filed for bankruptcy. Around that time, COA Parsippany requested a reduction in rent (although they did not yet have possession of the subject property). Pavilion denied that request.

On June 4, 2015, the DEP granted COA Parsippany a soil remedial action permit to remediate the contamination on the subject property. On June 26, 2015, Brinkerhoff informed Pavilion that it was issuing an RAO for the remediation of the subject property.

On July 20, 2015, Puschak signed a lease for the subject property with Doodle Bugs! Children's Center (Doodle Bugs) as tenant. On July 23, 2015, Pavilion sent COA a letter terminating the lease between Pavilion and COA Parsippany. The letter enumerated the following acts, which Pavilion alleged constituted default by COA Parsippany: (1) failure to pay rent after the lease commenced following issuance of the CO in November 2014; (2) failure to comply with the terms, provisions, and covenants of the lease, specifically by revocation of the lease guarantee by COA's bankruptcy filing; (3) failure to comply with lease terms by refusing to take occupancy of the subject premises and alternately demanding a reduction in rent and a diminished lease guarantee;

and (4) failure to diligently pursue tenant's required governmental approvals and reimburse Pavilion for the expenses associated with obtaining an RAO.

On July 23, 2015, COA, COA Parsippany, and Visitel filed a complaint and order to show cause with restraints in the Chancery Division against Pavilion and Puschak seeking performance of the lease. They alleged: (1) breach of contract; (2) anticipatory breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) lost profits; (5) failure to pay commissions due to Visitel; and (6) interference with contractual relations.[1]

On August 3, 2015, the trial court entered an order granting the restraints. On August 18, 2015, the court entered an order continuing the August 3, 2015 restraints, and finding that: (1) COA Parsippany did not repudiate the lease, which remained in full force and effect; (2) COA's bankruptcy filing was not an event of default under the lease; and (3) the commencement date of the lease was to be September 1, 2015. On August 27, 2015, COA Parsippany employees broke a lock box attached to the subject property in order to gain access to the premises.

---

[1] The complaint also alleges claims against Doodle Bugs and other defendants that were later withdrawn, as was the claim for lost profits.

 A-4967-16T2

Plaintiffs moved for reconsideration of the August 18, 2015 order, arguing that the provision setting the lease commencement date was erroneous. They argued that because it was Pavilion's responsibility to obtain the RAO, the lease could not commence until the RAO was issued.

On September 30, 2015, the court granted COA Parsippany's motion for reconsideration. In a written statement of reasons, the court concluded that because the SRRA was enacted after the lease was executed, the parties could not have contemplated which party would have the responsibility for obtaining an RAO. The court concluded that N.J.S.A. 58:10C-2, a provision of the SRRA defining who is responsible for obtaining an RAO, while broad enough to include a tenant, did not extend to a future tenant. Thus, the court concluded, because the parties did not "shift this burden" in the lease, Pavilion and not COA Parsippany was responsible for obtaining the RAO under the lease. The court concluded the commencement date of the lease "shall be established to be 30 days after the issuance of plaintiff's child care license or, if earlier, then on the date that licensed operations begin." A September 30, 2015 order memorialized the court's decision. The court also directed that possession of the subject property be given to COA Parsippany immediately.

A-4967-16T2

On October 15, 2015, Pavilion filed its answer and counterclaim seeking damages for: (1) the cost of obtaining the RAO; (2) lost rent and other expenses including real estate taxes and utilities based on COA's intentional delay in obtaining a license to operate a child care center; (3) property damages for the destroyed lock box; (4) additional costs it incurred as a result of COA receiving kickbacks from the vendors it required Pavilion to use when constructing and furnishing the building; (5) punitive damages; and (6) attorney's fees.

On November 20, 2015, after considering Pavilion's motion for reconsideration of the September 30, 2015 order, the court entered an order: (1) resetting the commencement date of the lease to December 1, 2015 and directing COA Parsippany to take possession of the subject property on that date; (2) ordering COA Parsippany to pay all utilities, insurance, and other expenses required under the lease from the day it takes possession; and (3) prohibiting COA Parsippany from taking possession until it has adequate insurance coverage. The court transferred the remaining issues raised in the complaint and counterclaim to the Law Division.

On December 4, 2015, COA Parsippany received approval to operate a child care center on the subject property. COA Parsippany took possession of the subject property and, in January 2016, began operation of a child care center.

A-4967-16T2

Although COA Parsippany paid rent beginning in December 2015, it took the position that it did not have to pay the local property taxes on the subject property during the initial twelve months of the lease, because its reduced rent during that period was a rent concession, triggering a provision of the lease excusing its obligation to pay local property taxes during concessionary periods.

On December 19, 2016, Pavilion filed a complaint against COA Parsippany in the Special Civil Part for possession of the subject property. The complaint alleged there was no concessionary period in the lease because there was no period of free rent and, therefore, COA Parsippany was responsible for local property taxes on the subject property in the amount of $53,883.51. Pavilion sought an order requiring COA Parsippany to vacate the subject property. The court transferred the Special Civil Part complaint to the Law Division for consolidation with the parties' pending claims, conditioned on COA Parsippany's payment of the outstanding local property taxes.

The court held a three-day bench trial. Among other relief, COA Parsippany sought $62,290 for Pavilion's failure to pay for the FF&E, a monetary penalty for the 298-day delay in completing construction after the 270-day contractual period, based on the $500 per day penalty in the contract, reimbursement for the local property taxes it paid on the subject property during

the first year of the contract, a $75,144.22 commission for Visitel, and $87,883.29 in attorney's fees. Pavilion sought a finding that the lease commenced in December 2014, thirty days after issuance of the CO, and an award of $282,917.43 in rent for the period December 2014 to November 30, 2015, unspecified damages for the break in, and attorney's fees.

The court issued an oral opinion. The court found credible Puschak's testimony that the delays in completing construction were out of Pavilion's control, due to weather, resistance to the project from municipal officials, and other causes. In addition, the court found that COA and COA Parsippany caused or acquiesced in many delays, likely because of COA's precarious financial condition. The court, therefore, concluded that COA Parsippany was not entitled to any damages for delay of completion of the building.

The court also found COA Parsippany did not use due diligence to obtain its license to operate the child care facility, including securing an RAO. The court concluded that while Pavilion was responsible for the cost of environmental remediation, COA Parsippany was responsible for ensuring the RAO was obtained in a timely fashion. The court attributed to COA Parsippany the obligation to obtain a preliminary assessment of whether environmental remediation was necessary and to Pavilion the obligation to undertake that

A-4967-16T2

remediation. The court awarded Pavilion $4200 for the cost of the initial environmental assessment, and denied its request for costs associated with the remediation required by that assessment.

With respect to the commencement date of the lease, the court expressed its view that the lease commenced thirty days after issuance of the final CO in November 2014. However, the court noted a different judge had previously determined at an earlier stage in the proceedings that the lease commenced on December 1, 2015. The court declined to disturb that ruling.

The court found COA Parsippany's request for reimbursement of the local property taxes it paid on the subject property to be "totally unsupported by the evidence or the agreement between the parties" and "unsustainable by any credible evidence presented." In addition, the court found no basis for the claim that Pavilion breached the covenant of good faith and fair dealing in the lease. To the contrary, the court found several instances of bad faith on the part of COA Parsippany, including its employees breaking into the subject property. The court awarded $1500 in punitive damages for the break in. The court found COA Parsippany's demand for $62,209 for the FF&E to be supported by the evidence and the unequivocal terms of the lease and awarded that amount.

The court rejected Visitel's demand for a commission, finding that Visitel was not licensed as a real estate broker in New Jersey at the time it solicited the lease or when the lease was signed. The court also concluded Visitel was not registered to do business in this State until 2017, ten years after the lease was executed. The court also noted there was no evidence Puschak was aware that COA and Visitel shared principals when he agreed to a commission.

Finally, the court denied the award of attorney's fees to any party. The court concluded that no party prevailed completely on its claims and, therefore, an award of attorney's fees was not warranted.

A May 30, 2017 order memorialized the court's decision. This appeal and cross-appeal followed. COA Parsippany argues the court erred by not granting it damages for construction delays, a reimbursement of local property taxes it paid, and attorney's fees. Visitel argues the court erred in denying it a commission. Pavilion cross-appeals the September 30, 2015 order to the extent it set a lease commencement date of December 1, 2015.

II.

Our scope of review of the judge's findings in this nonjury trial is limited. We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record. Rova Farms Resort,

Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). "Appellate review does not consist of weighing evidence anew and making independent factual findings; rather, [this court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999). "Deference to a trial court's fact-findings is especially appropriate when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). Since the trial court "'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alteration in original) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

After carefully reviewing the parties' arguments in light of the record and applicable legal principles, we conclude that the record contains substantial credible evidence supporting the court's findings of fact. We also, with one

exception, agree with the court's legal conclusions. We disagree only with the court's conclusion that the lease commenced on December 1, 2015.

Our review of the court's interpretation and construction of a contract is de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). "[A] lease is a contract and its terms are governed by contract principles." Maglies v. Estate of Guy, 193 N.J. 108, 143 (2007). Our task is to "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cty. Imp. Auth., 404 N.J. Super. 514, 528 (App. Div. 2009). "Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017). "[U]nambiguous contracts are to be enforced as written[.]" Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008).

The lease contains an unambiguous provision defining the commencement date of the lease as not "more than (i) thirty (30) days after the unconditional [CO] is issued or (ii) all governmental approval[s] have been received by Tenant to operate a child care facility." Contrary to COA Parsippany's suggestion, the lease does not contain a "whichever is later" provision. Nor does the lease

17

provide that both the issuance of the CO <u>and</u> the receipt of all government approvals must take place before the lease commences, as seems to have been concluded by the court when it issued the September 30, 2015 order.

The plain language of the lease provides that it will commence no later than thirty days after either one of the identified events takes place. It is undisputed that the unconditional CO was issued on November 13, 2014, prior to the receipt of all government approvals to operate a child care center. The lease, therefore, commenced within thirty days of November 13, 2014. The trial court's conclusion to the contrary, as well as the September 30, 2015 order setting a lease commencement date of December 1, 2015, is therefore reversed.

The matter is remanded for entry of an order setting a lease commencement date within thirty days of November 13, 2014. Because COA Parsippany's obligation to pay rent, local property taxes, and other costs commenced on the lease commencement date, Pavilion is entitled to recover back rent for the period between the recalculated commencement date and the date on which COA Parsippany began paying rent, as well as any local property taxes or other costs for which COA Parsippany was responsible during this period. The court shall recalculate the damages awarded in the May 30, 2017 order accordingly. The remainder of the May 30, 2017 order is affirmed.

A-4967-16T2

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION