**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2441-23

CAROL TAYLOR,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

      Respondent-Respondent.

_____

Argued March 31, 2025 – Decided June 4, 2025

Before Judges Berdote Byrne and Jablonski.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury, Agency Docket No. TPAF xx6336.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, PC, attorneys; Samuel M. Gaylord, on the brief).

Matthew C. Melton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Matthew C. Melton, on the brief).

PER CURIAM

Petitioner appeals from the Teachers' Pension and Annuity Fund Board's (the "Board") denial of her request for accidental disability retirement benefits ("ADR benefits") under N.J.S.A. 18A:66-39(c). The Board confirmed the Administrative Law Judge's ("ALJ's") decision that petitioner was permanently and totally disabled. The Board also adopted the ALJ's conclusion that petitioner's condition was caused by an exacerbation of a pre-existing condition rather than from a specific accident rendering her ineligible for ADR benefits. Deferring to the ALJ's factual conclusions and credibility assessments, we affirm.

I.

Petitioner was a long-time employee of the Mercer County Special Services School District as a physical therapist. As part of her job responsibilities, she often had to lift, push, and pull as part of her daily contact with the special needs students she assisted. During her twelve-year career, she developed a history of lower back injury following accidents she suffered in 2008, 2018, and 2019.

In 2008, petitioner was diagnosed with radiculopathy and lower back pain from herniated discs in her lower back that occurred when she attempted to lift

A-2441-23

a student out of a car. After she received steroid injections to the injury area and other conservative treatment, she returned to work approximately one year later.

Ten years later, in 2018, she suffered a lumbar strain and sprain and additional disc herniations when she tried to lift another student. Her treatment for this injury was more extensive. She was referred to an orthopedic surgeon who diagnosed her with a host of maladies including left-side and left leg sciatica, intervertebral disc degeneration in her lumbar region, acute bilateral lower back pain without sciatica, disc herniations, axial back pain, and degenerative disc disease. She received epidural injections and referrals to a spine surgeon for her radiating pain. In mid-2019, another orthopedic surgeon cleared petitioner to return to work and advised that she adhere to specific physical conditions including weight-lifting restrictions and avoiding repetitive bending. This physician also concluded that this accident may have been related to her 2008 injury. Following later examination, petitioner was cleared to return to work without any restrictions.

Petitioner returned to work in September 2019. Ten days later, she fell onto a concrete floor and reinjured her back when she provided gait-training therapy to a student. She was initially instructed to ice the injured area. Later,

3

after her back was x-rayed, she was given muscle relaxers and prescribed physical therapy. Additional diagnostic testing by a consulting physician revealed a lumbar strain. That same physician concluded this injury aggravated her previous injury from 2018 that had not completely healed. The doctor ultimately concluded petitioner suffered muscle strains in her lower back and radiculopathy in her back's lumbar region. The doctor also ordered a course of physical therapy.

In November 2019, petitioner was cleared to return to work with similar lifting, weight, and movement restrictions. She was also referred to a pain management specialist who gave her two injections that temporarily relieved her pain. Although petitioner was again cleared to return to work on light duty, petitioner testified that she was ultimately unable to work because of the impact the injury had on her inability to perform the activities of daily living.

In November 2020, petitioner applied for ADR benefits. The Board considered the application, denied her request, and awarded ordinary disability benefits at the maximum level instead. The Board concluded that although petitioner suffered an accident as part of her assigned duties and the accident was both undesigned and unexpected, her disability was not directly caused by the September 2019 accident. Rather, the Board found it resulted from an

4

aggravation of a pre-existing condition. Petitioner appealed this determination and the Board approved petitioner's request for an evidentiary hearing before the Office of Administrative Law.

At the hearing, the parties presented competing expert testimony as to the extent and permanency of petitioner's disability. Both experts reviewed medical records and took medical histories, and both conducted independent medical examinations. Petitioner's expert concluded that petitioner was totally and permanently disabled because of the September 2019 accident. The Board's expert, however, concluded petitioner's total and permanent disability resulted from an exacerbation of the 2018 injury. The ALJ considered both experts credible.

In her decision, the ALJ noted that "[t]he outcome of this case turns on the credibility of the medical experts and their assessments of [petitioner's] medical condition." Declining to accept petitioner's expert's conclusion and agreeing instead with the Board's expert, the ALJ ultimately determined the Board's expert's opinion was more reasonable because it was more consistent with petitioner's medical history. The ALJ noted:

> However, [petitioner's expert] stands alone in his conclusion. [Petitioner's consulted physicians] agree with [the Board's expert's] conclusion. Specifically, [one treating physician] stated in his October 7, 2019,

5

report that the petitioner had not fully healed from the October 2018 injury to her lower back and there was no additional diagnosis beyond lumbar strain from the September 13, 2019, incident . . . . The radiculopathy had already developed. Similarly, [another treating physician] noted the petitioner's pre-existing injuries with regard to her October 15, 2018, injuries.

In a comprehensive written opinion, the ALJ ultimately concluded that petitioner had not satisfied her burden to prove that her disability was directly caused by the 2019 incident and, therefore, she was not entitled to ADR benefits.

This appeal followed.

## II.

## A.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)); see also McKnight v. Bd. of Rev., Dep't of Lab., 476 N.J. Super. 154, 162 (App. Div. 2023). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo, 206 N.J. at 27 (quoting Herrmann, 192 N.J. at 27-28). Our review of an agency's decision considers:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency

6

follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013) (quoting Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

We must affirm an agency's findings of fact if "supported by adequate, substantial[,] and credible evidence." In re Taylor, 158 N.J. 644, 656-57 (1999) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Moreover, if we are "satisfied after [our] review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then [we] must affirm even if [we] feel[] that [we] would have reached a different result . . . ." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988). The burden of demonstrating arbitrary, capricious, or unreasonable action rests upon the party challenging it. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). We are not bound, however, by an agency's "determination of a strictly legal issue . . . ." Russo, 206 N.J. at 27 (quoting Mayflower Sec. Co., Inc. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We review

7

its purely legal conclusions de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020).

B.

A Teachers' Pension and Annuity Fund (TPAF) member is eligible for ADR benefits if the member is "permanently and totally disabled as a <u>direct result of a traumatic event</u> occurring during and as a result of the performance of [the member's] regular or assigned duties." N.J.S.A. 18A:66-39(c) (emphasis added). A petitioner seeking ADR benefits "must prove a disabling permanent . . . injury and, in so doing, must produce such expert evidence as is required to sustain that burden." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008).

Our Supreme Court established a five-part test to determine when an injury was a direct result of a traumatic event. The burden rests on the applicant to prove, by a preponderance of the evidence:

> 1. that [petitioner] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing

8

disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 212-13 (2007).]

In interpreting the "direct result" causation requirement, "the traumatic event need not be the sole or exclusive cause of the disability." Gerba v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 83 N.J. 174, 187 (1980), overruled on other grounds by Maynard v. Bd. of Trs. of Teachers' Pension & Annuity Fund, 113 N.J. 169 (1988). Causation is satisfied when "the traumatic event is . . . the essential significant or substantial contributing cause of the disability . . . even though it acts in combination with an underlying physical disease." Ibid. However, if the traumatic event merely "contributed to the progression of [the] [underlying] condition" by "aggravation," then it is not the "essential significant or substantial contributing cause" of the disability. Id. at 189, 187.

C.

Petitioner's sole argument on appeal is that she sustained her burden of proof established that her permanent and total disability was substantially caused by the September 2019 incident. She argues because she was able to perform all of her job-related duties before the September 2019 accident, and she was unable to do so after it, she has established her causation requirement and her expert's conclusion is more reasonable than the Board's. We disagree.

"When error in factfinding of a judge or administrative agency is alleged, the scope of appellate review is limited. We will decide whether the findings made could reasonably have been reached on 'sufficient' or 'substantial' credible evidence present in the record considering the proofs as a whole." Cannuscio v. Claridge Hotel and Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). "Appellate review does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered at trial." Ibid. (citing State v. Johnson, 42 N.J. 146, 161 (1964)). On appeal, the court gives "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." Close, 44 N.J. at 599.

As the ALJ noted, "the weight to which an expert opinion is entitled can rise no higher than the facts and reasoning upon which that opinion is predicated." State v. Jenewicz, 193 N.J. 440, 466 (2008) (quoting Johnson v. Salem Corp., 97 N.J. 78, 91 (1984)).  "This is particularly true when . . . the factfinder is confronted with directly divergent opinions expressed by the experts." State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004).  The weight accorded to an expert's testimony may depend on several factors, such as whether the expert is testifying regarding their specialty, if their conclusions are largely based on the patient's subjective complaints or on a cursory examination, and if their opinions are supported by objective evidence corroborated or contradicted by other physicians. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 86 (App. Div. 1961).  The factfinder, rather than a reviewing court, "is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded [his or] her testimony." In re Guardianship of DMH, 161 N.J. 365, 382 (1999).

Here, the ALJ's credibility determinations that were ultimately adopted by the Board were supported by ample evidence in the record.  It is undisputed between the testifying experts that petitioner had a history of back problems beginning in 2008.  She received substantial treatment for this pain from 2018

11

until a few weeks before the September 2019 injury. After it, she experienced identical issues including lower back pain and left leg pain with the addition of right-sided sacroiliac joint pain and right leg pain.

Petitioner had a well-documented history of lumbar spine issues that, according to the Board's expert, were "exacerbated" by the September 2019 injury. Petitioner's expert does not contest petitioner's age-related conditions in her spine and pre-existing lumbar spine pathology were "aggravated." These facts constitute substantial credible evidence to affirm the Board's denial of ADR benefits.

Here, the ALJ provided detailed reasoning as to why she placed more significant weight on the testimony provided by the Board's expert as opposed to that of the petitioner. Given the deference accorded to such determinations, we find no error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2441-23